MARTE v. GOVERNMENT OF GUAM.

No. 3.

District Court of Guam Appellate Division.

Sept. 21, 1953.

Crain & Phelan, Agana, Guam, for appellant.

Leon D. Flores, Island Atty., Agana, Guam, and John M. Webster, Deputy Island Atty., Agana, Guam, for appellee.

Before SHRIVER, Presiding Judge, and McLAUGHLIN and WIIG, Judges.

McLAUGHLIN, Judge.

This is an appeal from a judgment of the Island Court of Guam in a criminal case.

This appellant was tried upon information on the charges of operating a motor vehicle under the influence of liquor, assault and battery, disturbing the peace and resisting arrest; these offenses were alleged to have been committed on July 2, 1952. The court entered judgment of acquittal of the charges of assault and battery and of resisting arrest, and defendant was convicted of operating a motor vehicle while under the influence of. liquor and of disturbing the peace. A fine was imposed for the illegal operation of the motor vehicle, and a warning was given on the other offense of disturbing the peace.

The appeal is taken on two grounds: first, that because of alleged irregularities in the preliminary stages of the case, the defendant was denied due process of law contrary to the Bill of Rights of Guam, 48 U.S.C.A. § 1421b, and second, that there is no credible evidence on which to base a conviction.

*I.* · *Denial of Due Process.*

The alleged denial of due process consists of the arrest of the defendant and, after brief treatment in a hospital, his booking and incarceration in the Agana Jail with neither a preliminary hearing nor an opportunity to waive the same, until the time he was produced for arraignment about a week later. It appears from the record that the arraignment was the first occasion on which the defendant was before a magistrate, and that his incarceration for this time was solely on the motion of the arresting police. His claim of denial of due process rests upon the contention that the Penal Code of Guam requires certain intermediate steps to be taken by the gov-

ernment in bringing an accused person to trial, and that under the facts above, these steps were not taken.

■ The code sections relied upon by the defendant, as pointed out by the government in its brief, are directed to the situation in which arrests are made on citizens' complaints. It seems clear that these were not intended to apply to such a case as this in which the arrest was made by an officer viewing an alleged violation while in the course of his official duties. Penal Code, sections 780, 781, 782.

■ If we read further, however, we find other sections, not discussed by counsel, which bear on a case of this kind. Section 849 provides that a person arrested without a warrant by a police officer must be taken before the nearest or most accessible magistrate without unnecessary delay, and an information or complaint stating the charge against such person must be laid before such magistrate. Section 860 declares the purposes of this proceeding: to give notice of charges to the accused, to set bail, if any is to be allowed, *or the defendant committed in lieu thereof;* to preserve evidence, control witnesses, and to give opportunity to the accused to show no probable cause exists why he should be held to answer.

If, before filing the information, the defendant had not been legally committed by a magistrate, the information must be set aside at the arraignment by the court in which the defendant has been arraigned: Penal Code, section 995. But if the defendant does not originate the motion to set aside the information at this time, he is deemed to have waived his objection and is precluded from making later the objection mentioned in section 995: Penal Code, section 996.

Thus, if the defendant were not accorded his rights prior to arraignment, we have the rather startling conclusion that the defendant can be clapped in jail solely on the opinion of the arresting police officers who were not required by a magistrate to show probable cause for the arrest, that this imprisonment could have lasted for an entire week before any judicial appearance, and yet he is required to bring this to the attention of the court on his first appearance there, or be held to have waived his right to complain. In view of the difficulties encountered by an imprisoned defendant in obtaining and conferring with counsel at the beginning of his case it appears that the great possibilities of harsh results from this provision really should be brought to the attention of the legislature. It may well find that the interests of justice would be as well served—or better—by a relaxation of this rule to permit a wider range of time in which to consider and protect the rights involved —possibly to permit the question to be raised up to and including the time of commencement of the trial.

■■ The commendable purposes upon which section 849 of the Penal Code is founded are reflected in the requirements of the Federal Rules of Criminal Procedure, 18 U.S.C.A. The right to admission to bail is set forth in Rule 46(a) (1) which provides that a person arrested for an offense not punishable by death *shall* be admitted to bail. The United States Supreme Court has recently strongly supported this as expressing the historic policy protecting the presumption of innocence, the unhampered preparation of a defense, and preventing the infliction of punishment prior to conviction. Stack v. Boyle, 1951, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3. We think this, a fortiorari, demands that the defendant have the opportunity to request admission to bail before a magistrate promptly after his arrest. But for the provision of local law discussed above this in itself seems such a substantial right that its denial would call for reversal of this conviction. Under those provisions, the fact that this defendant did not raise this point at his arraignment, but delayed until the trial commenced, brings his complaint over the irregularity into court too late to be of any effect.

## II. Judgment Contrary to Weight and Credibility of the Evidence

█ The appellant contends under this specification that, due to the many conflicts in the evidence, the court should not have resolved them the way it did. As this court has already held in Taro v. government of Guam, D.C., 115 F.Supp. 523, the resolutions of conflicts and decisions on credibility are ordinarily the exclusive province of the trial court. On appeal, the result below on fact questions should be interfered with only where it appears that it is based on no competent evidence at all, or on evidence which no reasonable man could have believed. Bridgman v. United States, 9 Cir., 1950, 183 F.2d 750; 24 C.J.S., Criminal Law, § 1880, page 799 et seq.

A careful search of this transcript discloses very little evidence on the important question of the intoxication of the defendant, if any, and still less which meets the requirement of competency. In about four instances the subject was touched upon, but rather lightly in each case. Sgt. Pangelinan testified in one sentence, "I give him the sobriety test", but no results thereof were brought out (Transcript, p. 5). In his next answer he stated that he and another officer were about to leave for the hospital with the defendant, *for the sobriety test*, which indicates that the test had not already been given, but that it was to be given at the hospital. On page 7 he states, " * * * this man had been drinking, and was stumbling around, so I made up my mind to try the sobriety test." There was, however, no indication that the witness knew of any drinking as a fact within his own knowledge, and nowhere in the transcript is there found a statement by Sgt. Pangelinan, as the Court states in its Findings of Fact, that he smelled liquor on the breath of the defendant.

Evidence brought out from the other police officer, Sgt. Quinene, touched even more lightly on this subject; his only evidence was, "Well, I should say he was drunk at the time." This was "stricken" on objection as an inadmissible conclusion. The only other statement by this witness on this subject was that a physician who signed a report of examination did so without making any examination of the defendant (Transcript, pp. 19, 20).

Dr. Falks, the physician, also testified that due to the activity of the defendant it was impossible to make an examination, yet he made the diagnosis of acute alcoholic intoxication (Transcript, p. 25). Other than these references there is no evidence on the subject of intoxication in the transcript.

To sum it all up, it seems that if a sobriety test was ever given, there is no evidence of the results; the more weighty indications are that no test of any kind was given by anyone. Without this, the only statements in evidence on this point are the conclusions of Sgt. Pangelinan which were clearly unfounded in personal knowledge, and that of the medical examiner who, equally clearly, did not make an examination before stating his conclusion.

██ It is true that many conditions of common experience give rise to opinions or conclusions that are treated as facts—the sum total of visual or other sensations may be quite a reliable indication of the facts. But these opinions must be backed up on the record by a showing of some facts on which these conclusions are based—facts in the observation of the witness making the conclusion. Without them a finding of fact may be held unjustified without casting any reflections on the respectability or good faith of the witnesses. The effect of this is to impose a burden upon a party offering opinions as evidence to establish the familiarity of the witness with the condition about which he is to testify, and the particular facts he himself observed which gave rise to his opinion. We deal basically with the problem of selecting some of the factual matters which the eye or other senses have perceived and translating them into words for the record as a foundation for the opinion.

█ In this case we find no evidence at all to support a finding that anyone

smelled alcohol on the breath of the defendant; we find strong indications that no sobriety test was given, and positive indications that a medical examiner formed his opinion without making an examination of the defendant. The result is that no competent evidence is found in the record on which a finding of intoxication could reasonably have been based, and the conviction on this charge is accordingly reversed.