William Douglas EUBANK'S ADM'X (Alice Jo Eubank), Appellant,

v.

Elmer AUSTIN et al., Appellees.

Hugh BLICK, Appellant,

v.

Elmer AUSTIN et al., Appellees.

Court of Appeals of Kentucky.

March 16, 1956.

Thomas J. Sabetta, Owensboro, for appellants.

William L. Wilson, Owensboro, J. H. Thomas, Calhoun, for appellees.

MONTGOMERY, Judge.

These appeals are from two judgments in favor of Elmer Austin and Clara F. Austin in actions brought by the administratrix of the estate of William Douglas Eubank, deceased, and Hugh Blick. They sought damages arising from a collision between a motorcycle, on which the decedent and Blick were riding, and the Austin car. The actions were consolidated for trial.

The accident occurred in the City of Calhoun, Kentucky, where Main Street (Kentucky Highway 81) and Fifth Street intersect to form a T, with Main Street running north and south, and Fifth Street, a dead end, extending westward. Main Street at this point has a width from curb to curb of 56 feet, and Fifth Street is 27 feet wide. At this intersection, the car of Elmer Austin, being driven north on Main Street by his wife, Clara F. Austin, collided with the motorcycle owned and operated by William Douglas Eubank, deceased, proceeding south on the same street. Hugh Blick was seated behind Eubank on the motorcycle. Mrs. Austin was turning left from Main Street into Fifth Street when the motorcycle collided with the right rear bumper of the car. Both young men were injured, Eubank fatally.

Mrs. Austin said that she was proceeding north on Main Street and had signaled her intention to make a left turn. Blick denied seeing the signal. A second car was following immediately behind the Austin car. Just before the Austin car reached the intersection, a third car passed, also going north on Main Street. When her car neared the intersection, Mrs. Austin looked north on Main, and seeing no traffic started to make a left turn. She had almost completed her turn into Fifth Street when the motorcycle "just seemed to appear all at once". The motorcycle was some 15 or 20 feet away when she first saw it, and she estimated its speed at from 55 to 60 miles per hour. Main Street, some 300 to 400 feet north of the intersection, curves sharply to the left. It was appellees' theory that the motorcycle, traveling at a high speed, was "hugging" the curb as it rounded the curve and approached the intersection, and for this reason, Eubank failed to see the car in time to stop.

The decedent, Eubank, in a statement to the sheriff, said that his speed was 35 to 40 miles per hour immediately before the accident. The speed limit on this street was 35 miles per hour. There was no serious controversy as to the position of the two vehicles after they came to rest. Several witnesses testified that the left rear wheel of the automobile was resting on the southwest curb of Fifth Street, with the motorcycle lodged under the rear bumper of the car. The front end of the car was pointing west on Fifth Street and was almost entirely off Main Street.

Appellants sought to show that the point of impact was in the southwest corner of the intersection. They contended that Mrs. Austin was cutting a corner as she made her left turn and, therefore, was negligent. Appellees urged that Fifth Street at this intersection was narrow and that a slight blow would knock a car across the street into a curb.

Appellant Blick testified that the motorcycle was already half way through the intersection before Mrs. Austin started to make the left turn. He said, "She suddenly turned left into Fifth Street directly in front of us." He also said that Mrs. Austin, in executing the left turn, "cut a corner" and commenced turning left prior to reaching the center point of the intersection. Blick testified further that when Eubank became aware of his collision course he attempted, unsuccessfully, to

avoid the car by performing a maneuver of the motorcycle known as "laying it down", which consists of laying a motorcycle over on its side and sliding along on its guard bars. Appellants sought, by proving the location of skid marks and debris, to fix the point of collision in the southwest corner of Main Street in an effort to show that the car had "cut a corner" in making a left turn.

The sheriff of the county investigated the accident scene shortly afterwards. He found no skid marks from the motorcycle, but said the "back wheels" of the car had slipped four, five or six inches. He made no mention of debris. Other witnesses testified to skid and tire marks, as well as dirt and debris, in the southwest part of the intersection.

An eye witness to the accident stated that Mrs. Austin turned to the left of the center of the intersection without having reached it. He also said that neither of the vehicles was traveling fast nor was damaged badly.

Appellants contend that the trial court erred in failing to direct verdicts in their favor. The evidence was conflicting on many points concerning the existence of negligence on the part of Blick and the operators of the two vehicles, as well as the proximate cause of the injuries. The existence and location of debris, skid and tire marks, the operation and rates of speed of the vehicles with reference to control and regard for other traffic, and the signal and turn of Mrs. Austin were some of the factors on which the proof was contradictory.

■ This case is similar to Harris v. Morris, Ky., 259 S.W.2d 469, wherein the general rule was stated that negligence and contributory negligence are to be determined by the jury except where the uncontradicted testimony is such that but one conclusion can be drawn therefrom by fair-minded men, in which case it becomes a matter of law for the court. See also Jordan v. Marsee, Ky., 256 S.W.2d 25;

Stanley v. Caldwell, Ky., 274 S.W.2d 383. Likewise, proximate cause is ordinarily a question for the jury to consider. Louisville & N. R. Co. v. Powers, Ky., 255 S.W.2d 646. The facts of the present cases are not such as preclude all conclusions other than that the appellees' negligence was the sole and proximate cause of the injuries, or that appellant Blick was free from negligence. The trial court was correct in submitting the case to the jury.

■ Appellants question the competency of the testimony of appellee Clara F. Austin with respect to the speed of the motorcycle. She estimated the speed to be 55 or 60 miles per hour. The basis of the objection was that she first saw the vehicle when it was 15 or 20 feet ahead and thus did not have sufficient opportunity to judge the speed. This ignores other factors which Mrs. Austin may have considered in reaching her determination, such as the force with which the motorcycle struck her car. There was proof that the rear wheels of the car slipped from four to six inches and the left rear wheel was knocked upon the curb. Mrs. Austin, undoubtedly, took these things into consideration. The testimony was competent, but its credibility was for the jury. 5 Am.Jur., Automobiles, Section 651, page 861; Chesapeake & O. R. Co. v. Prater's Adm'x, 269 Ky. 174, 106 S.W.2d 625; White v. Saunders, 289 Ky. 268, 158 S.W.2d 393. There was other evidence indicative and corroborative of the speed of the motorcycle so that there was sufficient evidence on this point for submission of the issue to the jury.

The contention is made that appellees failed to prove that the negligence of the decedent, Eubank, was the sole and direct cause of the injuries sustained by appellant Blick. We find no merit in this contention. This question was correctly submitted to the jury under proper instructions.

■ No complaint is made to the instructions given the jury except the instructions given in each case which placed

the following duty on Eubank, operator of the motorcycle:

"(a) To keep a lookout ahead for other vehicles and to look for and heed signals which one operator might give of his intention to change his course of travel which might thereby affect his, Eubank's operation".

Appellants contend that the word "heed" has the connotation of "obedience" so that when the trial court charged the jury that it was the duty to look for and heed Mrs. Austin's signal, it, in effect, said that Eubank and Blick should have "seen and obeyed" such signal without regard to the position of, or the distance between, their vehicles with respect to the intersection.

"Heed" has been defined: "To regard with care, to take notice of, to give attention to." Webster's New International Dictionary, Second Edition. Notice, note, observe, and regard are synonyms. "Heedless" has been held to be the equivalent in meaning of careless or negligent. Silver v. Silver, 108 Conn. 371, 143 A. 240, 65 A.L.R. 943. "Heedlessness" is synonymous with "carelessness". Schwager v. Anderson, 63 N.D. 579, 249 N.W. 305; Peak v. Fripp, 195 S.C. 324, 11 S.E.2d 383; Harper v. Harper, 225 N.C. 260, 34 S.E.2d 185. See, also, 19 Words and Phrases, page 193. Such is the meaning of the word "heed". Its use in the instruction did not mean to obey, as contended by appellants, and was not prejudicial.

On voir dire examination, a juror failed to disclose his relationship to one of the appellees and sat upon the trial of the cases. Timely objection was made upon discovery of the relationship. Appellants contended that the juror was a blood cousin in the third degree to Clara F. Austin by reason of the fact that the grandfather of the juror was a brother of the great-grandfather of Mrs. Austin. The affidavit of the juror disclosed that he did not know of any relationship with Mrs. Austin and that there had been no social intercourse, personal visitation, or any acknowledged kinship or relationship between their families. An elderly sister of the juror made an affidavit in which she stated that her information was based on hearsay and a lineage genealogy of her family, and that if there was any relationship between the juror and Mrs. Austin, it would arise from a half-brother of her grandfather. She said any relationship between the juror and Mrs. Austin would be remote and in the eighth degree. She also verified the absence of social intercourse, visitation, or acknowledged relationship. No kin has ever been claimed and the parties were merely casual acquaintances.

 Remote kinship, whether by blood or marriage, about which the juror is unaware, is insufficient ground to set aside a verdict. Halleron v. Carrithers Creamery, Ky., 239 S.W.2d 92; Witt v. Lunsford, Ky., 271 S.W.2d 35. The trial court did not abuse its discretion in refusing a new trial on this ground.

Judgments affirmed.