## State of Vermont v. John E. LaBonte, Jr.

[144 A2d 792]

May Term, 1958

Opinion Filed September 2, 1958

*Margaret Lillie*, State's Attorney, for the State.

*George M. Fienberg* for the respondent.

**Hulburd, J.** This was a criminal prosecution under V. S. 47, §10,283 for "careless and negligent driving" so-called. At the conclusion of the State's evidence, the respondent moved for a directed verdict. The motion was granted and the State brings its exceptions here.

The question before us is whether the evidence as found in the record was sufficient to support a conviction for the crime charged. To answer this, we look first to the statute involved and then turn to the evidence.

V. S. 47, §10,283 reads as follows: "*Illegal Operation.* A motor vehicle sHall not be operated on a public highway, as defined in §10,044, in a careless or negligent manner, nor upon a bet, wager, or race, nor for the purpose of making a record, nor in a manner to endanger or jeopardize the safety, life or property of a person." We are concerned here only with that part of the statute which forbids operation in a careless and negligent manner, there being no complaint that the respondent committed any of the other specified acts of illegal operation.

It is to be noted that the statute does not within itself define the words *careless* and *negligent*. Moreover, we do not have the situation which existed in *Turner* v. *State,* 65 Ga App 292, 16 SE2d 160, 161, where the prosecution was under a

statute making it a misdemeanor to "carelessly or negligently set on fire any woods." Here the statute within itself did not define these words, but another section of the Georgia Code defined misdemeanor as being a "violation of a public law, in the commission of which there shall be a union or joint operation of act and intention or criminal negligence." In the present case we can find no supplemental statute which throws light on what the legislature meant by the words *careless* and *negligent*. This leaves us with the question of whether the legislature by the use of these words in the statute in question meant only ordinary negligence such as would allow a recovery in a civil action or whether criminal negligence was intended. If the latter, it would be incumbent upon the State to introduce evidence tending to show something more than ordinary negligence. It is only where the evidence tends to show a reckless disregard of the consequences or a heedless indifference to the rights and safety of others that criminal negligence may be said to exist.

■ It has been said that "criminality is not predicated upon mere negligence necessary to impose civil liability." *State* v. *Jones*, 152 Me 188, 191, 126 A2d 273, 275. Some courts seem to go so far as to assume that where negligence has been made a violation of an obligation to the State (i. e. a crime) it necessarily must be understood to be criminal negligence. Cf. *Cooper* v. *State*, 61 Okla Cr 318, 67 P2d, 981, 988. Perhaps this is an outgrowth of the traditional common law view that ordinarily intent is a necessary element of crime and that where intent is lacking, it must be supplied by such negligence as displays a reckless indifference to the lives and safety of others, that is to say, criminal negligence. See cases cited in a note found in 99 ALR 756, 762. It would seem that there is at least some tendency for courts to revert to common law concepts and to read into a criminal statute the requirement of criminal negligence even where it is clearly not included within its plain language. Such an approach to a problem of this sort is unfortunate for it is now well settled that it is within the power of the legislature to declare an act criminal irrespective of the intent or knowledge of the doer of the act. See Wharton's Criminal Law and Procedure (1957) Vol. 1, p. 28 and cases

cited; *State* v. *Gilmore*, 80 Vt 514, 516, 68 A 658, 16 LRANS 786. Furthermore, the power of a legislature to define a crime based upon ordinary negligence has been recognized in numerous jurisdictions. *Neessen* v. *Armstrong*, 213 Ia 378, 239 NW 56; *Com.* v. *Godshalk*, 76 Pa Sup 500; *State* v. *Hedges*, 8 Wash2d 652, 113 P2d 530; *Clemens* v. *State*, 176 Wis 289, 185 NW 209, 21 ALR 1490; *People* v. *Pociask*, 14 Cal 2d 679, 96 P2d 788.

It is noted in Wharton's Criminal Law and Procedure, Vol. 3, p. 172, in discussing "Reckless Driving" statutes that, "In a majority of jurisdictions, a reckless indifference to consequences of injury to another or to the property of another is an essential element but there appears to be a variance even as to this element, since some statutes may be worded so as to penalize driving in a manner which is no more than negligent."

The word *reckless* does not appear in our statute nor even in its title. Cf *Neessen* v. *Armstrong, supra*. The language which is found in the reckless driving statutes of most jurisdictions is entirely absent.

It is interesting to note in passing that the British Road Traffic Act, 1930, creates two offences: one for "reckless driving" (§11) and another for driving "without due care" (§12), the former carrying a heavier penalty than the latter.

In *Healey* v. *Moore*, 108 Vt 324, 338, 187 A 679, 685, this Court made a passing reference to our statute, and after quoting it said, "and this is merely declaratory of the common law." A statement to the same effect appears in *Hunter* v. *Preston*, 105 Vt 327, 337, 166 A 17. It may not be entirely clear whether these references were to the common law pertaining to negligence or to criminal negligence, but since the statements occur in civil cases, it is logical to assume that it was the former which the Court had in mind. Moreover the statement is consistent with what we believe has been the general understanding in regard to the Statute since its passage. This has been the first occasion that we have had to pass upon it directly in a criminal case and we hold that the words "in a careless or negligent manner" as used in the Statute refer simply to ordinary negligence such as would impose civil liability and that to support a conviction thereunder there is

no necessity for the State to produce evidence tending to show criminal negligence, as it is commonly defined. At the risk of belaboring the obvious, we wish to make it clear, however, that such negligence must be proved beyond a reasonable doubt. As was aptly pointed out by the State's Attorney in her argument, a prosecution of this sort differs somewhat from that in the ordinary case in that here it is for the jury to say both how the respondent drove and how the ordinary prudent man would have driven in the same circumstances. Since the latter, in the last analysis, is a matter of judgment, and since a conviction requires proof beyond a reasonable doubt, this requirement, while not raising the degree of negligence, does tend to make it necessary that the negligence be sufficiently clear and convincing to meet this measure of proof.

Having disposed of the statute, we now turn to the evidence to see whether in this case it was such as would have supported a conviction, that is, whether the trial court was in error in directing a verdict for the respondent.

The evidence introduced by the State tended to prove the following facts: The respondent, riding alone, was driving easterly toward Bennington from New York State. About one mile east of the Vermont-New York State line, his car went off the highway on the wrong (north) side of the road. After leaving the highway, the vehicle travelled with one wheel in the ditch and the other on the shoulder a distance of 552 feet, at which point it collided with a power pole. From here it skidded on its wheels an additional 142 feet and flipped over in the air and came to rest on its top. It was then fifteen feet off the north edge of the road and a total distance of 699 feet from the point where it had first run off the highway. One Harold Flanders, Jr., who was driving westerly along the same highway, came over a knoll just in time to see the respondent's car, immediately ahead of him, turning over in the air on its top. There were no other witnesses to the accident which occurred at the early hour of five o'clock in the morning. It was still dark, but the weather was clear. Visibility at that point was good and extended westerly for seven-tenths of a mile along the road. Flanders observed no lights of other vehicles at the time and place of the accident. The cement road was

dry and its 20-foot width was flanked on either side by shoulders of hard-packed gravel broad enough for a car to travel on.

When Flanders came onto the scene of the accident, he immediately stopped and went to the respondent's assistance. He found him momentarily dazed but otherwise uninjured. The respondent volunteered no explanation as to how the accident happened and soon got a ride from a passerby to Bennington where he secured the services of a wrecker with which he returned to get his badly damaged car. On his arrival the respondent found that while he had been away, a State police officer had come to the scene. Then followed a conversation between the officer and the respondent and, shortly after, at about six-thirty in the morning, the respondent's story was reduced to a signed written statement.

At the trial below, the State introduced this statement in evidence as an exhibit. In it, after stating that he had had a couple of bottles of beer at about eleven o'clock, before setting out for Lake Babcock, N. Y., at around 2:00 A. M., and after adding that he had two more bottles of beer in New York on the way to Lake Babcock, the respondent gave the following explanation of the accident: "After coming back from New York, I met a car coming over on my side of the road until I got to a point where there is a road that goes off to the right across from where my car rolled over. I didn't know whether I should turn into this road, as I was going about 40 M P H. I hit the soft shoulder on the left side of the road and overturned."

With the evidence standing as stated, at the close of the State's case, the respondent moved for a directed verdict in his favor. This motion was granted. The State duly excepted to the trial court's ruling and claims that it was entitled to go to the jury on the question of the respondent's guilt or innocence. On the other hand, it was the respondent's position that there was "no proof submitted to show any negligence whatsoever on the part of the respondent. The respondent admits that an accident took place, and that is all." The respondent's position amounts to this: he says that his statement discloses that he was faced with a sudden emergency and that he was forced off the road by a car approaching on the wrong side of the highway; that all this accounts for his driving

the way he did; that the circumstances upon which the State relies lose all significance in view of his explanation; in short, that the State has failed to produce evidence of circumstances which exclude every reasonable hypothesis except that the respondent is guilty, citing *State* v. *Boudreau*, 111 Vt 351, 16 A2d 262, and other cases to the same effect. If the respondent were entitled to have the facts related by him in his statement to be taken as true, there might be some force to his contention.

Apparently, counsel for the respondent makes this assumption for the opening sentence of his argument in his brief asserts: "The transcript disclosed uncontroverted evidence that the respondent was forced off the road by a car approaching on his side of the road." In the face of the other evidence in the case this assertion can not stand. The whole tenor of the transcript counters the respondent's explanation of the accident. The jury could have properly found from the testimony of Flanders that there was no approaching car; that if there had been he would have seen it. He had seven-tenths of a mile clear vision ahead of him. He arrived on the scene before the respondent's car came to rest. The undisputed physical facts showed that the respondent's car did not leave the road where he said it did, that is, opposite where a side-road leads off, but five hundred fifty-two feet sooner. The jury would have had a right to consider whether it is reasonable that a person who has driven a car off the road to avoid being hit, would continue on for this distance and then crash into a power pole with such momentum as to skid another one hundred forty-two feet. There was evidence, too, that there was no need to drive off the shoulder at all since it was wide enough to accommodate a motor vehicle; nor was this a "soft shoulder" as stated by the respondent, but one of hard-packed gravel. It should be obvious that it can not be said that the respondent's explanation of the accident was "uncontroverted." On the contrary, the jury had before them sufficient evidence to justify a finding by them that the respondent's explanation of how the accident happened was fabricated. If they so concluded, they would have been justified in going further and finding that there remained no reasonable hypothesis under the circumstances in evidence except that the respondent was driving at an ex-

cessive rate of speed without proper control of his vehicle and that by reason thereof, he was guilty as charged.

■ One thing we should add, however, to do away with an apparent misconception: the State by introducing the respondent's statement in evidence was not bound by it. Under our practice there is a duty on the State to put before the jury all available evidence which sheds light upon the transaction under investigation. In doing this, however, the State does not lend credence to the evidence it introduces but is free to *trample* upon it if necessary. *State* v. *Searles*, 108 Vt 236, 239, 184 A 701; *State* v. *Slack & Clough*, 69 Vt 486, 493, 38 A 311. The action of the trial court in directing a verdict in the respondent's favor foreclosed the State from this very opportunity. It was error.

*Judgment reversed and cause remanded.*