STATE OF HAWAII *v.* LARRY TAMANAHA.

No. 4288.

DECEMBER 10, 1962.

TSUKIYAMA, C.J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY WIRTZ, J.

This case arose out of an automobile accident occurring on October 25, 1961, at approximately 9:30 P.M., on Sixth Avenue between Harding and Waialae Avenues in the City and County of Honolulu. A Pontiac Tempest,

owned and operated by defendant-appellant, traveling on Sixth Avenue towards Waialae Avenue, struck the rear of a Dodge, owned by Mr. and Mrs. Sakugawa, which had been parked on Sixth Avenue between Harding and Waialae Avenues approximately 150 feet from Harding Avenue. The parked Dodge was forced over a 10 to 12 inch curbing and came to rest with three of its wheels on the sidewalk adjoining Sixth Avenue. Extensive damage was inflicted on the rear left portion of the parked Dodge, while the damage to defendant's Pontiac centered upon the right front portion thereof. Defendant admitted that he had partaken of the proverbial "two beers" prior to the accident.

As a result of this accident defendant was charged with "careless and heedless" driving under R.L.H. 1955, § 311-1. The District Magistrate of the District Court of Honolulu found him guilty as charged. On appeal to the Circuit Court of the First Circuit he was again convicted of the charge by the circuit judge after a de novo jury-waived trial. From the sentence imposed by the circuit judge defendant brings this appeal.

The only specification of error, namely, that "there was manifest, material and prejudicial error in finding Defendant, Appellant, guilty as charged as the evidence adduced was insufficient as a matter of law to premise said verdict" raises the single question of the sufficiency of the evidence to warrant this conviction.

The statutory prohibition against "careless and heedless" driving embraces "whoever operates any vehicle * * * carelessly or heedlessly of the rights or safety of others, or in a manner so as to endanger or be likely to endanger any person or property * * *." R.L.H. 1955, § 311-1.

Unlike the statutes of most other jurisdictions covering the general subject of "reckless" driving, the Hawaii

statute is almost unique[1] in its language as it does not use the words and phrases "wilful and wanton disregard," "recklessly" or "in reckless disregard" of the safety of persons or property, commonly employed elsewhere. It is no wonder then that the generally applied rule in those other jurisdictions is that something more than mere negligence in the operation of an automobile is necessary to constitute the offense of reckless driving, and a wilful disregard of the consequences is required. See, *Annotations*, 86 A.L.R. 1278, 52 A.L.R.2d 1337; 5A Am. Jur., *Automobiles and Highway Traffic*, § 1180, p. 984.

The Hawaii statute, on the other hand, in prescribing alternative modes of conduct in the operation of a vehicle, employs the language in the first instance that such operation be not done "carelessly or heedlessly of the rights or safety of others" and in the second that it be not done "in a manner so as to endanger or be likely to endanger any person or property."

The words "carelessly" and "heedlessly" are considered in Webster's Third New International Dictionary, unabridged, to be synonymous with each other and with negligence as connoting the failure to take "ordinary and proper care" or "not taking heed" without the overtones approximating wilfullness or wantonness in "deliberately courting danger" found in the definition of "reckless." To the same effect see *Eubank's Adm'x* v. *Austin,* 288 S.W.2d 358, 361 (Ky. 1956); *Silver* v. *Silver,* 108 Conn. 371, 143 Atl. 240; *Pitkin* v. *New York & N. E. R.R.,* 64 Conn. 482, 30 Atl. 772, 773. "Heedless" means "careless," *Harper* v. *Harper,* 225 N.C. 260, 34 S.E.2d 185, 188; *Peak* v. *Fripp,* 195 S.C. 324, 11 S.E.2d 383, 384, and "carelessness" indi-

---

[1]Vermont, by statute, prohibits operation of a motor vehicle "in a careless or negligent manner" which was held in *State* v. *LaBonte,* 120 Vt. 465, 144 A.2d 792, 794, to "* * * refer simply to ordinary negligence * * *." This is the only statute coming to our attention that is at all similar to R.L.H. 1955, § 311-1.

cates ordinary negligence. *State* v. *Hayes,* 244 Minn., 296, 70 N.W.2d 110, 113; *Caldwell* v. *Maupin,* 61 Ohio App. 161, 22 N.E.2d 454; *Pelfrey* v. *Commonwealth,* 247 Ky. 484, 57 S.W.2d 474, 476; *Turner* v. *Cross,* 83 Tex. 218, 18 S.W. 578, 582; *Bindbeutal* v. *Street Ry.,* 43 Mo. App. 463, 470.[2] In *State* v. *Labonte, supra,* 120 Vt. 465, 144 A.2d 792, 794, the Vermont Supreme Court, in a prosecution for careless and negligent driving, held "* * * that the words 'in a careless or negligent manner' as used in the Statute refer simply to ordinary negligence such as would impose civil liability and that to support a conviction thereunder there is no necessity for the State to produce evidence tending to show criminal negligence, as it is commonly defined." On the other hand, "recklessness" is more than "negligence" and generally implies lack of care coupled with disregard for consequences, and conduct which is more than negligent may be reckless without being wilful or wanton. *Skalla* v. *Daeges,* 234 Iowa 1260, 15 N.W.2d 638, 642. Or, as aptly stated in *La Marra* v. *Adam,* 164 Pa. Super. 268, 63 A.2d 497, 501: " 'Recklessness implies conscious appreciation of the probable extent of danger or risk incident to contemplated action, while negligence in the legal sense implies knowledge only of a probable source of danger in the act.' Lloyd v. Noakes, 96 Pa. Super. 164, 168." The addition of the phrase "of the rights or safety of others" after the words "carelessly or heedlessly" merely points to the nature of the duty without enlargement on the concept of due care.

---

[2] In felony cases, the courts have sometimes been influenced by the necessity of showing criminal intent as felonies are generally regarded as offenses *malum in se* rather than *malum prohibitum.* In *State* v. *Jones,* 152 Me. 188, 126 A.2d 273, 276, this view, despite a vigorous and well reasoned dissent, was adopted in holding that the words "negligently or carelessly" in a statute providing that whoever, while on a hunting trip, negligently or carelessly shoots and wounds or kills any human being, refer to criminal rather than ordinary negligence. This view is not consonant with the Hawaii negligent homicide statute as seen *infra.*

It is significant that in the 1941 legislative session the territorial legislature, while enacting the negligent homicide statute,[3] which specifically excludes the concepts of wilfullness or wantonness and ties the word "reckless" in with the terms "careless" and "negligent," at the same time amended what is now R.L.H. 1955, § 311-1 by substituting the word "carelessly" in place of the term "furiously."[4]

This would seem to indicate a legislative intent to make ordinary negligence the standard of conduct under both the negligent homicide and the "careless and heedless" driving statutes. The word "furiously" is certainly more indicatory of wilful and wanton conduct than the term "carelessly" which negates such notion.

The alternative course of conduct censored by R.L.H. 1955, § 311-1, that such be not "in a manner so as to endanger or be likely to endanger any person or property" likewise refers to a failure to exercise due care. *People* v. *Grogan,* 260 N.Y. 138, 183 N.E. 273; *People* v. *Korytowski,* 14 Misc. 2d 417, 179 N.Y.S.2d 424.[5] The *Grogan*

---

[3]Section 1 of Act 71, Session Laws of Hawaii 1941 (now R.L.H. 1955, § 291-10) reads:

   "*Negligent homicide; penalty.* Every person who by the operation of any vehicle in a *careless, reckless* or *negligent* manner, *but not wilfully or wantonly,* shall cause the death of another, shall be guilty of the crime of negligent homicide and shall be punished by imprisonment at hard labor for not more than five years." (Emphasis added.)

[4]Other amendments not pertinent to this opinion were likewise made. The statute at the time of amendment, R.L.H. 1935, § 6280, read as follows:

   "*Furious or heedless driving; punishment.* Whoever *furiously* or *heedlessly* of the safety of others, rides any horse or other animal, or drives or conducts any carriage, wagon, buggy, omnibus, cart, bicycle, automobile, motorcycle, locomobile, or other vehicle, and thereby imminently endangers the personal safety of any person, shall be punished by a fine not less than five dollars nor exceeding five hundred." (Emphasis added.)

[5]Defendant cites this county court case for the proposition that "to support a conviction in the instant case, there must be a showing that defendant *recklessly disregarded consequences of his act* and failed to exercise reasonable caution or reasonable foresight." (Emphasis added.)

case involved a statute providing that reckless driving should "include" driving a motor vehicle in a manner unnecessarily interfering with the free and proper use of the highway or unnecessarily endangering users thereof, and prohibiting reckless driving *eo nomine*. The court held that reckless driving within the provision prohibiting such driving *eo nomine* meant something more than mere negligence in the operation of an automobile, and denoted operation under such circumstances as to show a reckless disregard of the consequences; but that if the provision declaring that the offense should include driving in the stated manner should be construed, in order to avoid indefiniteness, as if the word "unreasonably" were substituted for the word "unnecessarily," and as contemplating an interference with or endangering the user of the highway through the failure to use reasonable care, reasonable caution or the reasonable foresight of a reasonably prudent and careful person, negligence was the essential element of the offense denounced by the latter provision.

---

The actual holding of this case, however, is otherwise as the court at page 425 stated:

"To sustain a conviction of reckless driving, the People had to show beyond a reasonable doubt that the defendant, on July 6, 1958, in the Town of Niskayuna, operated his automobile in a reckless manner and so as to unreasonably interfere with the free and proper use of the highway and unreasonably endangering the users of said highway. In short, it must be shown that the defendant failed to exercise the reasonable care, the reasonable caution or the reasonable foresight of a reasonably prudent and careful person."

This is nothing more than a requirement of mere negligence on the part of the operator for conviction in conformity with the ruling in *People* v. *Grogan, supra.*

Defendant also relies on another and earlier county court case, *People* v. *Whitby*, 44 N.Y.S.2d 76. However, this case misconstrued the rule of law set down in *People* v. *Grogan, supra,* in holding that the alternative course of conduct contained in the New York statute, which is similar in substance to that contained in R.L.H. 1955, § 311-1, must show "something more than merely error of judgment or negligence." Consequently, although similar on its facts, it is of no assistance in the instant case as this ruling is contrary to the law of New York as expressed in *People* v. *Grogan, supra.*

Both portions of the statute (R.L.H. 1955, § 311-1), then, set up the standard of ordinary negligence as determinative of "careless and heedless" driving in the operation of vehicles, namely, the failure to exercise that care which a reasonably prudent person would have exercised under the given circumstances. This is true despite the language in *Territory* v. *Kunimoto*, 37 Haw. 591, 595, where a determination of the question was unnecessary to the result therein reached. *Cf., Territory* v. *Kanda*, 41 Haw. 591; *Territory* v. *Nihipali*, 40 Haw. 331.

With this in mind, we turn to a consideration of the evidence adduced in the court below, aware that this evidence must be considered in its strongest light for the State by an appellate court in passing on the legal sufficiency of such evidence to support a conviction. *State* v. *Carvelo*, 45 Haw. 16, 31, 361 P.2d 45. Also, *State* v. *Yoshino*, 45 Haw. 640, 372 P.2d 208; *Glasser* v. *United States*, 315 U.S. 60, 80, citing *United States* v. *Manton*, 107 F.2d 834, 839 (2d Cir.). It matters not if a conviction under the evidence as so considered might be deemed to be against the weight of the evidence so long as there is substantial evidence tending to support the requisite findings for conviction. *State* v. *Foster*, 44 Haw. 403, 409, 354 P.2d 960; *State* v. *Carvelo, supra,* at page 33. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there is substantial evidence to support the conclusion of the trier of fact. Further, the rule is the same whether the accused has been tried before a judge or a jury. *Territory* v. *Kinoshita*, 38 Haw. 335; 22 C.J.S., *Criminal Law*, § 401(5), p. 1046; Wharton's *Criminal Law and Procedure* (Anderson 1957), Vol. V, § 2254, p. 512; *Edmondson* v. *State*, 30 Ala. App. 433, 7 So. 2d 508; *Commonwealth* v. *Johnson*, 123 Ky. 437, 96 S.W. 801; *Campbell* v. *State*, 221 Md. 80, 156 A.2d 217. Nor has the adoption of the Hawaii Rules of

Criminal Procedure, modeled after the Federal Rules of Criminal Procedure, altered this rule. *Cf., Campbell* v. *United States,* 291 F.2d 401 (5th Cir.) ; *Marte* v. *Government of Guam,* 115 F.Supp. 524.

A resume of the evidence adduced at the trial discloses that there were no eye-witnesses to the accident other than defendant. Mrs. Suyako Sakugawa testified that she received a telephone call during the evening of October 25, 1961, informing her that there had been an accident involving a Dodge automobile, registered in the name of her husband and herself. On approaching the scene of the accident (on Sixth Avenue between Harding and Waialae Avenues) she found the Dodge on the sidewalk with one wheel on the road, the other three wheels having been forced over a curbing of "about 10 to 12 inches." Testifying further, she stated that she found the trunk of the Dodge smashed, "the back and the light and everything was smashed." As to the condition of defendant's automobile she testified that it was damaged in the front, "the right-hand side. The fender in the front and the light."

Her husband, Mr. Sakugawa, testified that on the day of the accident he had parked the Dodge on Sixth Avenue, between Harding and Waialae Avenues "approximately about 150 feet from Harding Avenue" at 1:30 P.M., before going to work. At that time the Dodge was in good condition. The next time he saw the car was at 11:50 P.M., on the same day at George's Towing Service on Young Street. In describing the damages inflicted on the Dodge he testified "the left rear was smashed in. The left rear window was just like somebody with a chisel had ripped it."

The police officer investigating the accident, Herman King, testified that upon arrival at the scene of the accident he noticed two heavily damaged cars on Sixth Ave-

nue. One of the cars was on the sidewalk area while the other car was still on the road. He further noticed that the 1955 Dodge on the sidewalk had suffered damages to the left rear portion, to the left rear fender and bumper and that the trunk was dented and sprung. As to the Tempest he noted damages to the right front fender. He further testified:

"I approached Mr. Tamanaha and asked him if he was the driver of the Tempest or not and he claimed he was the driver. There were injuries to his face area, the front tooth; and at that time, I noticed that Mr. Tamanaha had a strong alcoholic breath. He could hardly stand. He was staggering. In questioning him, he had to lean against his car; and when I asked him for his driver's license, he had a very hard time getting it out and he could hardly find it—bleary eyes. At that time, I asked him whether he had been drinking or not and he stated yes, drinking water[6]—."

Testifying further, the police officer said:

"When I couldn't—after questioning Mr. Tamanaha, I couldn't get any answer from him as to whether he had been drinking. I asked him what happened, and at that time he stated to me that he was travelling in the mauka direction on Sixth Avenue, following the black car, when suddenly the black car stopped and he struck the black car on the rear. A few minutes later, Mr. Tamanaha changed his statement and stated he was following the black car and the black car suddenly reversed into his car and the driver of the black car got out of the car, approached him and struck him

---

[6]Defendant's testimony was:

"A I drank about two.
"Q Two what?
"A Two beers."

in the mouth—that is how he sustained his injuries." (Tr. pp. 16, 17.)

Officer King concluded his testimony by saying that he checked the Dodge, the "black car" referred to in the foregoing testimony, and noticed that the engine was cold and while checking the roadway he further noticed a dry spot. There had been rain prior to the accident, indicating the car was parked there.

Defendant then took the stand on his own behalf after a motion for judgment of acquittal was denied by the trial judge. He testified that on the day in question he drank two beers at his place of employment and that before the accident he had been traveling on Harding Avenue (no direction stated) and that the accident occurred on Sixth Avenue after he had passed the intersection.[7] After he passed the intersection and was on Sixth Avenue he noticed a car parked on the right with another car approaching him with the "lights on high" and was blinded by the oncoming lights and "tried to stop." On cross-examination defendant admitted giving the two different versions of the accident to Officer King at the scene of the accident as testified to by the officer.

From this evidence, incomplete though it may be, the inference of negligence on the part of defendant could have been readily deduced by the trial judge. Excessive speed of defendant's automobile flows from the damages inflicted and the bodily transportation of the parked car over the curb. Lack of control of his vehicle, as well as excessive speed, can be gleaned from his own testimony, considered on its face value, discredited and self-serving though it may be. This conclusion is heightened on re-

---

[7]To get onto Sixth Avenue from Harding Avenue he must have made a turn either to the right or to the left into Sixth Avenue just prior to the accident, although there is no testimony on this point.

direct examination where he offers the only explanation[8] for his inconsistent versions of the accident given to the investigating officer, showing a lack of orientation and mastery of his senses and faculties, thus corroborating the inference to be derived from Officer King's testimony that he was under the influence of liquor, which is always a proper consideration on a charge of "careless and heedless" driving. *Cf., State* v. *Sullivan,* 58 N.D. 732, 227 N.W. 230; *People* v. *McGrath,* 94 Cal. App. 520, 271 Pac. 549, 551; and see, *Annotation,* 52 A.L.R. 2d 1364.

Defendant's prior inconsistent statements given to the investigating officer at the scene of the accident, inconsistent not only with his sworn version of the accident but also with each other, present a double-edged sword thrust at the core of the defense. One edge by way of impeachment strips away from defendant's testimony everything uncorroborated by other credible evidence being here the physical evidence. The other edge confronts him with an admission against his interest.[9] IV Wigmore on *Evidence* (3d Ed.), § 1048, p. 3; 31 C.J.S., *Evidence,* § 270, p. 1022; *People* v. *Southack,* 39 Cal. 2d 578, 248 P.2d 12; *Pekelis* v. *Transcontinental & Western Air,* 187 F.2d 122 (2d Cir.). *Cf., Gougher* v. *Hansler,* 388 Pa. 160, 130 A.2d 150.

---

[8]"MR. YAMANE: Mr. Tamanaha, what was the reason you told the officer you thought this car was backing up?

"WITNESS: The car was coming and—.
"Q (By Mr. Yamane, interrupting) You were able to stop?
"A Yes, and I thought the car was rolling back.
"Q You thought the car was rolling back because your car was going forward?
"A Going forward, actually.
"Q In other words, you thought that because you had your brakes on?
"A Yes."

[9]In neither of his prior versions of the accident to the police officer is mention made of "blinding" headlights or that he was "blinded" or otherwise hampered in the operation of his car. The same is true of his explanation under redirect examination of the sole reason for their inconsistency.

Either or both edges of the sword make the telling blow that there was in fact no "blinding" or "glaring" headlights and that his defense is pure fabrication.

Even if so, defendant's claim that he was blinded by the lights of an oncoming car proceeding toward him on Sixth Avenue, does not excuse his own negligence. *Mathers* v. *Botsford,* 86 Fla. 40, 97 So. 282; *Singleton* v. *Roman,* 195 Md. 241, 72 A.2d 705. *Cf., Commonwealth* v. *E. L. Stephens, III,* 179 Pa. Super. 255, 115 A.2d 904; *Commonwealth of Pennsylvania* v. *Richard D. Poust,* 57 Schuykill Legal Record 36 (Pa. Quar. Sess.). And see, *Annotation, Automobiles-Blinding Lights,* 22 A.L.R. 2d 292.

Defendant testified that he "tried to stop" before the collision. There is no competent evidence in the record to corroborate this. Moreover, since the Dodge was parked only 150 feet from the intersection of Harding and Sixth Avenues, the fair inference is to the contrary. If defendant, having initially slowed down as he must have to execute his turn into Sixth Avenue, had, on seeing the parked car and within 150 feet, applied his brakes, it would be inconceivable that the parked Dodge would have been bodily transported almost a car's length over a ten inch curbing and have been so extensively damaged in its left rear end. The fair inference is that defendant, heedless of the rights of others, after completing his turn, with all of the exuberance embodied in Jackie Gleason's battle cry of "And away we go!", stepped on the gas and plunged headlong into the parked Dodge.

Defendant contends that "the mere occurrence of an accident, with proof of nothing more, is insufficient as a matter of law to sustain a finding of guilty of reckless or heedless driving." We take no issue with this contention. It is in accord with the rule of this jurisdiction as set forth in *Territory* v. *McGregor,* 22 Haw. 786, where

the court at page 793 stated the rule to be:

"The evidence showed, without conflict or contradiction, that Smith was in the car which defendant's automobile ran into, and the jury could readily see from the charge, as a whole, that they were not to find defendant guilty by reason of the 'mere fact that there was a collision between the automobile driven by the defendant and the one being driven in front of him.' * * * The gist of the law, as given in the charge of the court, was that in determining from the evidence whether defendant was guilty as charged the jury should take into consideration the time and place of the offense charged; the condition of the vicinity as to light or darkness; the condition of defendant's automobile and his ability to stop it by means of the brakes with which it was equipped; his manner of driving the car and whether or not he could have avoided the collision by slowing down or by stopping or turning his auto so as to avoid striking the car with which he collided."

However, we cannot accept the contention of defendant that since "reckless" driving refers to the manner of operation of the vehicle that eye-witnesses are required for a conviction as it must be "capable of observation and narration by witnesses," citing *People* v. *Smith,* 36 Cal. App. 2d 748, 92 P.2d 1039 and *People* v. *McNutt,* 40 Cal. App. 2d 835, 105 P.2d 657. While more than the "mere fact that there was a collision" must be shown, the physical evidence can well attest to the negligent manner in which the defendant operated the vehicle.

In *State* v. *LaBonte, supra,* 120 Vt. 465, 144 A.2d 792, cited earlier as having a statute similar to that of Hawaii, and requiring only ordinary negligence as the standard of guilt, evidence introduced by the state in a prosecution for careless and negligent driving established

the following facts: The defendant, riding alone, was driving easterly toward Bennington from New York State. About one mile east of the Vermont-New York State line his car went off the highway on the wrong (north) side of the road. After leaving the highway, the vehicle traveled with one wheel in the ditch and the other on the shoulder a distance of 552 feet, at which point it collided with a power pole. From here it skidded on its wheels an additional 142 feet and then flipped over in the air and came to rest on its top. It was then 15 feet off the north edge of the road and a total distance of 699 feet from the point where it had first left the highway. One Harold Flanders, Jr., who was driving westerly along the same highway, came over a knoll just in time to see the defendant's car, immediately ahead of him, turning over in the air on its top. There were no other witnesses to the accident which occurred at the early hour of five o'clock in the morning. Flanders observed no lights of other vehicles at the time and place of the accident. At the trial below the state introduced in evidence the pre-trial statement of defendant. In it, after stating that he had had a couple of bottles of beer at about eleven o'clock, before setting out for Lake Babcock, New York, at around 2:00 A.M., and after adding that he had two more bottles of beer in New York on the way to Lake Babcock, he gave the following explanation of the accident:

> " 'After coming back from New York, I met a car coming over on my side of the road until I got to a point where there is a road that goes off to the right across from where my car rolled over. I didn't know whether I should turn into this road, as I was going about 40 M P H. I hit the soft shoulder on the left side of the road and overturned.' "

The lower court granted a directed verdict for the de-

fendant. The Supreme Court of Vermont in reversing the lower court's decision held that the evidence was sufficient to present a jury question as to the defendant's guilt, saying at page 796:

"* * * the jury had before them sufficient evidence to justify a finding by them that the respondent's explanation of how the accident happened was fabricated. If they so concluded, they would have been justified in going further and finding that there remained no reasonable hypothesis under the circumstances in evidence except that the respondent was driving at an excessive rate of speed without proper control of his vehicle and that by reason thereof, he was guilty as charged."

Here, as seen above, we have more than a mere collision, as the physical evidence and even the testimony of the defendant in conjunction with that of the investigating officer and the owners of the parked Dodge sufficiently show the probability of negligence on the part of defendant and that is all that is required to sustain the conviction. We need not determine that the evidence shows negligence as a matter of law but merely that the evidence shows a possibility that negligence could be found as a matter of fact.

True, not all of the surrounding circumstances of the nature indicated in the above quoted ruling of *Territory v. McGregor, supra,* were before the court below, still the evidence of surrounding circumstances, incomplete though it was, is substantial and supports the finding of guilt by the trial judge. Under the test applicable to appellate review, as earlier indicated, we would hardly be justified in disturbing the judgment of conviction.

Affirmed.

*Ernest Y. Yamane,* for Defendant-Appellant.

*Patrick F. Tuohy,* Deputy Prosecuting Attorney (*John*

H. *Peters,* Prosecuting Attorney, with him on the brief) for Plaintiff-Appellee.

### CONCURRING OPINION OF CASSIDY, J.

I concur in the construction of R.L.H. 1955, § 311-1, adopted in the court's opinion. I also am in full accord with the ultimate holding that the evidence sustains the conviction. However, I am unable to agree that the proof in the case warrants the inference defendant impetuously "stepped on the gas" after he turned into Sixth Avenue. On my analysis of the evidence, the conviction soundly and properly rests on the permitted inference that the defendant—whatever the speed he was travelling at the time—negligently failed to observe and react to the presence in his path of the parked Dodge as he proceeded up Sixth Avenue.