**STATE OF HAWAII**, Plaintiff–Appellee, v. **EDUARDO M. PINEDA**, Defendant–Appellant

NO. 12718

(CR. NO. 87–0133(1))

FEBRUARY 10, 1989

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

246

## OPINION OF THE COURT BY NAKAMURA, J.

Eduardo Pineda was adjudged guilty of Extortion in the Second Degree[1] and Assault in the Third Degree[2] after a trial by jury in the Circuit Court of the Second Circuit. He argues on appeal that the State failed to prove extortion and the trial court erroneously admitted evidence of prior bad acts on his part. Concluding from a review of the

---

[1] HRS § 707–764, in relevant part, reads:

**Extortion.** A person commits extortion if he does any of the following:

(1) Obtains, or exerts control over, the property or services of another with intent to deprive him of the property or services by threatening by word or conduct to:

    (a)    Cause bodily injury in the future to the person threatened or to any other person; or

    . . . .

(2) Intentionally compels or induces another person to engage in conduct from which he has a legal right to abstain or to abstain from conduct in which he has a legal right to engage by threatening by word or conduct to do any of the actions set forth in paragraphs (a) through (k) of this section[.]

and HRS § 707–766 reads:

**Extortion in the second degree.** (1) A person commits the offense of extortion in the second degree if he commits extortion:

    (a)    Of property or services the value of which exceeds $50 during any twelve–month period;

    (b)    As set forth in section 707–764(2).

(2) Extortion in the second degree is a class C felony.

[2] HRS § 707–712 reads:

**Assault in the third degree.** (1) A person commits the offense of assault in the third degree if he:

    (a)    Intentionally, knowingly, or recklessly causes bodily injury to another person; or

    (b)    Negligently causes bodily injury to another person with a dangerous instrument.

(2) Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

record that extortion was proved and the trial court did not abuse its discretion in allowing testimony describing his prior acts, we affirm the judgment.

## I.

Count I of the indictment against Eduardo Pineda charged that on or about April 8, 1987 he "intentionally compel[led] or induce[d] Daniel Gorsich to engage in conduct from which he had a legal right to abstain or to abstain from conduct in which he had a legal right to engage, by threatening by word or conduct to cause bodily injury in the future to Daniel Gorsich[.]" The second count charged that on or about April 5, 1987 Pineda "intentionally, knowingly, or recklessly cause[d] bodily injury to . . . Gorsich[.]" The offenses occurred in Waialua Valley on Molokai, where the defendant and the victim resided with their families.

Pineda moved into the valley in January of 1985 when he leased a plot of land adjoining Gorsich's farm. In the beginning the two families were on friendly terms, but relations soon became strained. Pineda's dogs were a source of the tension between the neighbors. Gorsich, as well as other neighbors, complained with what he felt was good reason that the dogs posed a threat to his children.

The tension mounted after Pineda was charged with growing marijuana. The charge, however, was dismissed before trial. Pineda subsequently made it known that he thought Gorsich informed the police of the illegal cultivation of marijuana on the land occupied by Pineda. Though Gorsich went to great lengths in attempting to convince Pineda that such was not the case, he did not succeed.

Matters came to a head on April 5, 1987 when the two met on the road leading to their farms. Gorsich testified at trial that Pineda first said, "[l]ook Daniel, no witnesses, you want to die right now[?]" Then, according to Gorsich, Pineda assaulted him by butting his forehead and pulling out a clump of hair from his beard. Gorsich immediately called the police and registered his complaint with the officer who responded to the call.

A few days later, Gorsich was persuaded to meet with Pineda and a neighbor, Clifford Awana, and attempt to resolve the dispute without judicial intervention. The mediation session was held at Awana's home on April 8, 1987. At the conclusion of the meeting Gorsich agreed to with-

draw the assault charge. But he agreed to do this, he later told the jury, only because Pineda threatened him with harm if he did not.

Gorsich went home from the meeting and told his wife what happened. They decided to call their minister and discuss the matter with him. At the conclusion of the discussion, Gorsich decided the better course for him to follow was to leave the valley, but to go through with the prosecution. He advised the police of what took place at Awana's home, and the two–count indictment against Pineda followed.

At trial, Gorsich's account of what happened at Awana's home included the following testimony:

> As mediation progressed, rather than being specific about what he [Pineda] wanted to do, he brought up numerous details about his uncle, about brothers on Kauai or off island or family on . . . Molokai. All who were upset by this and who felt would bring harm to us if I didn't drop the charges and try to settle this thing. . . . [A]t one point he said, if you don't drop the charges, Daniel, you and your family are going to burn. At another point he said, you know, Daniel, I can get you alone again. You'll die.

That threats were made was corroborated by Awana; his testimony at trial was:

> Towards the end of the mediation as I brought forth the points of agreement I thought that things were going smoothly but then I felt that Eduardo got a little insistent on having Daniel drop the charges against him. . . . [I]t was somewhat of an intimidating manner that he was using. . . . It was something to the effect that if Daniel didn't drop the charges, he would get him.

Pineda admitted threatening Gorsich but claimed he had no intention of carrying out the threat.

The jury returned verdicts of guilty to both counts of the indictment. The defendant appeals from the judgment of conviction entered by the circuit court; he seeks a reversal of the conviction of extortion on the ground that the evidence adduced at trial was insufficient to sustain the conviction. Alternatively, he seeks a new trial on the ground that evidence of other acts of alleged misconduct on his part was erroneously admitted.

## II.

Turning to the defendant's primary thesis, we begin by reiterating the proposition that the evidence adduced in the trial court "must be considered in its strongest light for the State . . . in passing on the legal sufficiency of such evidence to support a conviction." *State v. Tamanaha*, 46 Haw. 245, 251, 377 P.2d 688, 692 (1962) (citations omitted); *State v. Cummings*, 49 Haw. 522, 533, 423 P.2d 438, 445 (1967). And "[t]he test on appeal," we have said, "is not whether guilt is established beyond a reasonable doubt, but whether there is substantial evidence to support the conclusion of the trier of fact." *State v. Tamanaha*, 46 Haw. at 251, 377 P.2d at 692; *State v. Smith*, 59 Haw. 456, 464, 583 P.2d 337, 343 (1978).

## A.

The defendant argues the "conviction for Extortion in the Second Degree must be set aside . . . because the evidence [even considered in the strongest light for the State] directly contradict[s] the essential element that [he] 'did intentionally compel or induce' Gorsich to . . . abstain [from conduct in which he had a legal right to engage . . . .]" In other words, "[t]he fact that [Gorsich] did not 'drop' the [assault] charge" renders the evidence insufficient to establish extortion. At most, the defendant contends, the evidence proves there was an attempt to commit the charged offense.

Though defined and categorized under the rubric of extortion in the Penal Code, the crime in question is substantially different from that known to the common law. "At common law, extortion [was] committed when a public officer, under color of office, corruptly obtain[ed] a fee to which he [was] not entitled." C. Torcia, *Wharton's Criminal Law* § 695, at 481 (1981) (footnote omitted). But extortion under the Hawaii Penal Code covers the conduct of private persons as well and a wide range of acts.

What is now proscribed by HRS § 707–764(2) was formerly characterized as criminal coercion.[3] "The underlying presumption [for prohibiting conduct of such nature was] that the coercion of a person to do or abstain from any act, when he has a legal right to do the opposite, presents a criminal threat to society." Commentary on HRS § 707–724 (1976) (footnote omitted) (repealed by Session Laws of Hawaii (Haw. Sess. Laws)1979, ch. 106, §§ 1, 2). Thus, HRS § 707–764(2) deems it criminal for one to intentionally compel or induce another "to engage in conduct from which he has a legal right to abstain or to abstain from conduct in which he has a legal right to engage by threatening by word or conduct to do any of the actions set forth in paragraphs (a) through (k) of [section 707–764(1)]." *See supra* note 1. Consistently therewith Count I of the indictment against Eduardo Pineda, as we noted at the outset, charged that he "intentionally compel[led] or induce[d] Daniel Gorsich to engage in conduct from which he had a legal right to abstain or to abstain from conduct in which he had a legal right to engage, by threatening . . . to cause bodily injury . . . ."

## B.

The defendant urges that the State failed to establish one of the elements of the offense charged. "The ingredients [of an offense], denominated 'elements' in § 702–205 [of the Penal Code], are the conduct, the circumstances attendant to conduct, and the results of conduct, which are specified in the definition of [the] offense and which negative a defense

---

[3] HRS § 707–724 (1976), which has been repealed, defined the offense of criminal coercion. The section, in relevant part, read:

> **Criminal coercion.** (1) A person commits the offense of criminal coercion if he intentionally compels or induces another person to engage in conduct from which he has a legal right to abstain or to abstain from conduct in which he has a legal right to engage, by means of instilling in him a fear that, if the demand is not complied with, the defendant or a third person will:

> (a)    Cause bodily injury to any person[.]

HRS § 707–724 was repealed by Haw. Sess. Laws 1979, ch. 106 when the Penal Code provisions defining extortionate conduct were consolidated in HRS §§ 707–760 to 707–769.

on the merits." Commentary on HRS § 702–205.[4] The defendant would have us rule that the evidence adduced at trial cannot sustain his conviction of extortion since his conduct did not result in a withdrawal of the assault complaint by Gorsich. Viewing the evidence as we must, we conclude that the elements of the crime were proved.

Gorsich, the record shows, agreed to withdraw the assault complaint at the conclusion of the session at Awana's home because Pineda threatened that "if you don't drop the charge, Daniel, you and your family are going to burn" and "you know, Daniel, I can get you alone again." Thus, there was sufficient evidence to establish that Gorsich was "induced" "to engage in conduct from which he had a legal right to abstain." His decision thereafter not to abide by the agreement to withdraw the complaint did not negate the finding implicit in the jury verdict that Gorsich was induced to withdraw the assault complaint after being threatened with harm by Pineda, or putting it more simply, that Gorsich agreed not to prosecute when he had a legal right to do so because of Pineda's threats. In the light of the testimony recounted earlier, we can only conclude all of the elements of Extortion in the Second Degree were established.

We therefore affirm the judgment of the Circuit Court of the Second Circuit.[5]

*Susan Barr*, Deputy Public Defender, for appellant.

*James B. Takayesu*, Deputy Prosecuting Attorney, for appellee.

---

[4] HRS § 702–205 reads:

**Elements of an offense.** The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:

    (a)    Are specified by the definition of the offense, and

    (b)    Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

[5] We find no merit on the claim of trial error with regard to the admission of evidence.