PEOPLE v ABRAMCZYK

Docket No. 82592. Submitted March 5, 1986, at Lansing. Decided October 6, 1987.

Niels P. Abramczyk was convicted of negligent homicide following a jury trial in Ingham Circuit Court, Jack W. Warren, J. Defendant was sentenced to two years probation, with the first sixty days to be served in jail, fined costs, and prohibited from driving a motor vehicle during the term of his probation unless he filed a petition with the trial court demonstrating that he required driving privileges to maintain employment. Defendant appealed, claiming that the trial court should have granted his motion for a directed verdict because the prosecution failed to present direct proof of negligence, that the trial court should have granted his motion to set aside the verdict or motion for a new trial for the same reason, and that the trial court abused its discretion by imposing the sentence it did.

The Court of Appeals *held:*

1. Sufficient evidence was introduced to support defendant's conviction, and the negligent homicide statute is not unconstitutional.

2. The trial court properly considered the perceived efficacy of licensing sanctions in fashioning the terms of defendant's probation.

Affirmed.

SHEPHERD, P.J., concurred in part and dissented in part. Judge SHEPHERD stated that defendant's conviction of negligent homicide based upon a noncriminal act of ordinary negligence, i.e., failing to look into his automobile's rearview mirror before executing the lane change which resulted in the collision with the victim's automobile, was not violative of due process of law. Judge SHEPHERD noted that, had the victim survived the accident, defendant could at most be held responsible for the civil infraction of careless driving, but concluded that the provision

REFERENCES

Am Jur 2d, Criminal Law §§ 525 *et seq.*

Am Jur 2d, Homicide §§ 91 *et seq.*

What amounts to negligence within meaning of statutes penalizing negligent homicide by operation of motor vehicle. 20 ALR3d 473.

by the Legislature of criminal sanctions in cases where death results from the negligent operation of a motor vehicle is nonetheless a proper exercise of legislative power. With regard to the sentence imposed in this case, Judge SHEPHERD concluded that it was based upon improper reasons and not specifically tailored to the particular circumstances of defendant and this case, and he would therefore remand for resentencing.

1. HOMICIDE — NEGLIGENT HOMICIDE.

An act of ordinary negligence, which by itself is not criminal, may serve as a basis for a conviction of negligent homicide (MCL 750.324; MSA 28.556).

2. HOMICIDE — NEGLIGENT HOMICIDE — CONTRIBUTORY NEGLIGENCE.

Contributory negligence is not a defense to negligent homicide, although it may be a factor to consider in determining proximate cause.

3. CRIMINAL LAW — SENTENCING.

A sentencing court must specifically tailor its sentence to the particular circumstances of each defendant and his case and may not impose a particular sentence on one defendant based on well-known violations by others.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, *Robert B. Ebersole,* Chief Appellate Attorney, and *M. Ann Conlan,* Assistant Prosecuting Attorney, for the people.

*Mary E. Bennett,* for defendant on appeal.

Before: SHEPHERD, P.J., and M. J. KELLY and R. L. TAHVONEN,* JJ.

PER CURIAM. We agree with Judge SHEPHERD's conclusions that the evidence was sufficient to support the conviction and that the negligent homicide statute is constitutional.

However, we hold that Judge Warren properly considered the perceived efficacy of licensing sanc-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tions in fashioning the terms of the defendant's probation.

Affirmed.

SHEPHERD, P.J. *(concurring in part and dissenting in part).* Following a jury trial, defendant Niels Peter Abramczyk was convicted of negligent homicide, MCL 750.324; MSA 28.556. He was sentenced to two years probation, with the first sixty days to be served in the Ingham County Jail, fined costs of $1,100 at the rate of $50 per month, and prohibited from driving a motor vehicle during the term of his probation unless he filed a petition with the trial court demonstrating that he required driving privileges to maintain employment. The majority affirms and I agree but would remand for resentencing.

The basis for the negligent homicide charge was that defendant had operated his Pontiac Firebird automobile in a careless or negligent manner by making an improper lane change on a February morning in 1983 on Saginaw Street in Lansing. It is undisputed that, as defendant changed lanes to the right, the right rear side of his car struck the left front side of a car in the next lane driven by George Helms. Helms' automobile went over the curb and struck a utility pole. Helms died a short time later from injuries suffered in the accident. Neither driver was speeding. Defendant testified that, before he changed lanes, he looked out of the rear and side windows of his car and saw no traffic in the next lane. A witness who was driving behind defendant and saw the accident, however, testified that defendant did not look back before changing lanes. I will assume that defendant did not look back and that he operated his vehicle with ordinary negligence. Even if he had looked back and had failed to see the vehicle in the next lane, however, he could have been found negligent.

Defendant raises three arguments on appeal: 1) that the trial court should have granted defendant's motion for a directed verdict because the prosecutor failed to present direct proof of negligence; 2) that the trial court should have granted defendant's motion to set aside the verdict or motion for a new trial for the same reason; and 3) that the trial court abused its discretion by imposing the sentence it did. The first two issues are without merit. There was sufficient evidence from which the jury could find that the prosecution established ordinary negligence beyond a reasonable doubt. Thus, if the negligent homicide statute can be constitutionally applied to this case, there was sufficient evidence of defendant's guilt based upon an act of ordinary negligence.

We also sua sponte directed the parties to brief the following issues: "(a) whether the decriminalization of traffic offenses under MCL 257.626b [MSA 9.2326(2)] has any effect on the ability of the State to charge defendant with negligent homicide for an act of ordinary negligence not involving any criminal conduct and (b) whether a noncriminal act may be rendered criminal by the death of the victim."

I

The negligent homicide statute, MCL 750.324; MSA 28.556, provides:

Any person who, by the operation of any vehicle upon any highway or upon any other property, public or private, at an immoderate rate of speed or in a careless, reckless or negligent manner, but not wilfully or wantonly, shall cause the death of another, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years or by a fine of not more than $2,000, or by both such fine and imprisonment.

The basis of defendant's negligent homicide conviction was careless or negligent operation of a vehicle, i.e., an improper lane change, which led to the death of another. Prior to the decriminalization of certain traffic offenses by the Legislature in 1978, careless or negligent operation of a motor vehicle was a misdemeanor punishable by up to ten days in jail and a fine, MCL 257.626b; MSA 9.2326(2). The statute was amended by 1978 PA 510 to change the same offense into a civil infraction.

Defendant was not charged with reckless driving, a criminal offense under MCL 257.626; MSA 9.2326, nor was it claimed that his negligent homicide conviction was based upon an underlying act of reckless driving. Instead, he was convicted of negligent homicide based upon an act of ordinary negligence, an act which by itself is not criminal. The criminal charge in this case was therefore based upon an otherwise noncriminal act which became criminal because the victim died. Had the other driver lived, even if in a long-term coma, defendant at most could have been charged only with careless or negligent driving for the same conduct, now a civil infraction. The prosecutor concedes this last point. The victim's death, however, resulted in defendant's being charged and convicted as a criminal under the negligent homicide statute. This case is thus different from a case where the degree of culpability of a criminal act is increased by the death of the victim, e.g., reckless driving (a crime) becoming negligent homicide by reason of a death, or assault with intent to murder (a crime) becoming murder by reason of a death.

Construing a nearly identical predecessor of the negligent homicide statute, the Supreme Court held in *People v Campbell,* 237 Mich 424, 428-429; 212 NW 97 (1927), that a conviction requires only

proof of ordinary negligence. See also *People v McKee,* 15 Mich App 382, 385; 166 NW2d 688 (1968). Slight negligence, however, is not actionable under the statute. *Campbell, supra* at 429. Because the offense is a statutory crime, the Legislature has the power to define it without regard to the presence or absence of criminal intent or culpability in its commission. *McKee, supra.*

Early on, the statute weathered numerous constitutional challenges, including those arguing a denial of due process. *People v McMurchy,* 249 Mich 147; 228 NW 723 (1930). The Supreme Court noted the number of deaths resulting from automobile accidents and concluded that the Legislature "was prompted to pass a law to curb reckless, careless, and negligent driving which caused death, in cases where the negligence was less than gross." *McMurchy, supra* at 161. See also *Campbell, supra* at 429, noting that it is a "harsh statute, but finds justification in the serious results that are liable to follow the negligent operation of automobiles on extensively traveled streets and highways." In upholding the statute, the *McMurchy* Court wrote:

> The law is well settled that the legislature, in the exercise of its police power in order to preserve the health, morals, and safety, may constitute something to be a crime that theretofore was not criminal. It may impose a criminal responsibility for a tort that theretofore carried with it only civil liability. [249 Mich 162.]

The fact that the Legislature chose to decriminalize careless or negligent driving in 1978 does not change the *McMurchy* result. The Legislature apparently decided that negligent driving not resulting in death does not warrant the time and expense that must be devoted to criminal litiga-

tion. The fact that negligent homicide was not
decriminalized suggests that the Legislature con-
tinues to regard negligent driving causing death as
an appropriate occasion for the imposition of crim-
inal sanctions. This is a reasonable policy decision
beyond the reach of judicial intervention. In addi-
tion to its public safety goals, the negligent homi-
cide statute publicly expresses society's regard for
the value of human life. By saying that criminal
sanctions are authorized when negligent driving
causes death, the Legislature states on behalf of
the community as a whole that human life has a
unique value that morally justifies criminal penal-
ties, even where life is taken negligently and
unintentionally. A statute reasonably related to
such matters of public morality is a legitimate
exercise of legislative power. Accordingly, I do not
find that the negligent homicide statute violates
due process by punishing defendant for an act of
ordinary negligence resulting in another person's
death. The statute is not arbitrary or capricious in
singling out this particular conduct and result
while leaving as civil infractions other negligent
conduct involving automobiles.

I do not believe this is a situation where a
noncriminal act, negligent driving, is subsequently
made criminal by a fortuitous event, the death of
the victim. I note that the United States Supreme
Court held unconstitutional a criminal statute
which made it an offense to obtain credit within
three months prior to bankruptcy proceedings un-
der the false pretense of carrying on a business in
*United States v Fox,* 95 US 670; 24 L Ed 538, 539
(1877), stating:

"If a person shall engage in a transaction which,
at the time of its occurrence, is not a violation of
any law of the United States to wit: the obtaining

goods upon credit by false pretenses, and if, subsequently thereto, proceedings in bankruptcy shall be commenced respecting him, is it within the constitutional limits of congressional legislation to subject him to punishment for such transaction considered in connection with the proceedings in bankruptcy?"

The question presented by the certificate of division does not appear to us difficult of solution. Upon principle, an act which is not an offense at the time it is committed cannot become such by any subsequent independent act of the party with which it has no connection. By the clause in question, the obtaining of goods on credit, upon false pretenses, is made an offense against the United States, upon the happening of a subsequent event, not perhaps in the contemplation of the party and which may be brought about, against his will, by the agency of another. The criminal intent essential to the commission of a public offense must exist when the act complained of is done; it cannot be imputed to a party from a subsequent independent transaction. There are cases, it is true, where a series of acts are necessary to constitute an offense, one act being auxiliary to another in carrying out the criminal design. But the present is not a case of that kind. Here an act which may have no relation to proceedings in bankruptcy becomes criminal, according as such proceedings may or may not be subsequently taken, either by the party or by another.

In the instant case, however, the unfortunate and unintended death of George Helms was not an independent event, a mere chance having no connection to defendant's actions. It was part of a continuous occurrence beginning with defendant's improper lane change. An improper lane change is not a criminal offense. An improper lane change which results in another's death, however, is a criminal offense.

Having concluded that the negligent homicide

statute is a proper exercise of legislative power, I note some of the ramifications. It is clear that contributory negligence is no defense to negligent homicide, although it may be a factor to consider in determining proximate cause. See *People v Clark,* 295 Mich 704, 708; 295 NW 370 (1940); *Campbell, supra* at 430-431; *People v Phillips,* 131 Mich App 486, 492; 346 NW2d 344 (1984). This Court has held that a defendant's negligent driving need not be the sole proximate cause of death to support a conviction for negligent homicide. *People v Dolen,* 89 Mich App 277; 279 NW2d 539 (1977). But see *People v Buck,* 71 Mich App 28; 246 NW2d 351 (1976), reaching the opposite result.

The negligent homicide statute allows criminal prosecution for otherwise noncriminal negligent driving which results in another's death. An accident occasioned by ordinary negligence that causes serious injury short of death to a victim or numerous victims, however, is not a crime. One generally careful driver who is only guilty of ordinary negligence can cause massive property damage and unimaginable carnage in a single accident. Some of the victims may even remain in a vegetative state for decades and yet this driver may not, under the statute, be charged with a crime. Another driver who causes what appears to be a minor accident, however, may become a criminal because the person who was injured suffers from an illness or weakness that, coupled with the accident, results in death. Under *Dolen,* it might be argued that a defendant and decedent could both be partially negligent, and yet the defendant could become a criminal by reason of a death several months later partially caused by the medical malpractice of the treating physicians.

The existence of these apparent inconsistencies, however, does not convince me that the statute

should be declared unconstitutional. In effect, the Legislature has determined that preserving life on the highways is of such paramount importance that the laudable goal of consistency must give way. It is argued that making the noncriminal failure to look in the rear-view mirror a crime if an accident victim dies (but not if he lives for years in a coma) will have no impact at all on traffic safety. This may be a point well taken, but it is a point that must be addressed to the Legislature. Defendant's conviction must be affirmed.

## II

Defendant also argues that his sentence was excessive and that the trial court failed to articulate a basis for it on the record.

I do not reach the question whether defendant's sentence is so excessive that it shocks our judicial conscience, *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983). I find instead that defendant's sentence was based upon improper reasons and not specifically tailored to the particular circumstances of defendant and the case. *Id.* at 537.

Although defendant had no prior criminal record, the trial court concluded that it was necessary to impose a jail sentence to prevent defendant from engaging in further, similar behavior and to discipline defendant and impress upon him and other members of the community "the grave responsibility one shoulders when he or she operates a motor vehicle." The court added:

Isolation of the offender from society to prevent criminal conduct during the period of confinement: One may argue, well, if you simply take the driver's license away from Mr. Abramczyk, you would avoid a repeat performance. The problem with that is that anyone whose eyes are open and who

has lived any length of time knows that a number of people drive without authorization, and so this Court deems it necessary to isolate this offender for a period of time.

Imposing a particular sentence on one defendant because of well-known violations of others does not tailor the sentence to the crime or the criminal. It is not clear from the record why driving restrictions without a jail sentence would not be appropriate for *this defendant.* Moreover, before imposing a jail sentence and concluding that this defendant requires isolation from the community, some reference to the defendant's driving record should also have been made. Accordingly, I would remand for resentencing at which the trial court would impose an appropriate sentence tailored to the particular circumstances of the case and defendant.