590 So.2d 1139 (1991)
STATE of Louisiana
v.
Ronald RITCHIE.
No. 90-K-0478.
Supreme Court of Louisiana.
January 22, 1991.
Dissenting Opinion February 28, 1991.
On Rehearing December 12, 1991.
*1140 Richard C. Goorley, Shreveport, for Ronald L. Ritchie defendant-applicant.
William Guste, Atty. Gen., Henry N. Brown, Dist. Atty., James M. Bullers, Asst. Dist. Atty., for State of La. plaintiff-respondent.
John S. Baker, Jr., for John S. Baker, Jr. amicus curiae.
Dissenting Opinion by Justice Watson February 28, 1991.
PHILIP C. CIACCIO, Judge Pro Temp.[*]
Relator Ronald Ritchie was found guilty as charged of three counts of negligent homicide, violations of LSA-R.S. 34:851.6. He was sentenced to serve the maximum term of one year in jail and to pay a fine of $1,000 on each of the three counts with the sentences to run consecutively. His convictions and sentences were affirmed by the Louisiana Second Circuit Court of Appeal. State v. Ritchie, 556 So.2d 651 (La.App. 2nd Cir.1990). This Court granted the relator's application for certiorari for consideration of Assignment of Error Number Three: Whether the trial court erred in instructing the jurors that "ordinary negligence" was the standard of proof under LSA-R.S. 34:851.6. State v. Ritchie, 563 So.2d 888 (La.1990).
On May 17, 1989, Ronald Ritchie was operating his boat in an area known as Bossier Slough in Lake Bistineau. The Bossier Slough intersects with a body of water known as Miller's Cut. The relator was travelling approximately 45 m.p.h. as he entered the intersection of the two bodies of water. Relator, who was alone in his boat, had just passed on his port side a pleasure boat in which four people were riding. Testimony at trial indicated that the defendant was travelling "excessively fast" and, rather than watching in front of his boat, he continued to stare back at the pleasure boat for "an inordinate period of time."
A boat carrying three passengers was being driven by Albert Dupree on the right, tree-lined bank of Bossier Slough. The relator's boat headed into the path of Dupree's boat and struck Dupree's boat on the port side, causing it to run into a grove of trees. The three passengers in Dupree's boat were killed.
Testimony at trial revealed that the relator's blood alcohol concentration was approximately.06 to .08 percent at the time of the accident. Urinanalysis also indicated that the relator had a substance in his system indicating significant use of marijuana over a long period of time and possibly recent use. A quantity of marijuana was seized from the relator's boat following the accident.
Certiorari was granted in this case to consider whether the trial court correctly instructed the jury that negligence under LSA-R.S. 34:851.6 is defined as "the omission on the part of a person to do some act which an ordinary, careful and prudent man would do under like circumstances or the doing of some act which an ordinary, careful and prudent man under like circumstances wouldn't do by reason of which *1141 another person is endangered in life or bodily safely." (Tr. 401). The relator argues that the level of negligence necessary to convict under LSA-R.S. 34:851.6[1] is "criminal negligence" as defined by LSA-R.S. 14:12[2].
The relator contends that the term "negligent", used in R.S. 34:851.6, must be interpreted in conjunction with Title 14 of the Louisiana Revised Statutes. LSA-R.S. 14:7 describes a crime as "that conduct which is defined in this Code, or in other Acts of the Legislature, or in the Constitution of this State." LSA-R.S. 14:8 defines criminal conduct as "criminal negligence that produces criminal consequences." Criminal negligence is defined in LSA-R.S. 14:12 as set forth in footnote 2, below. The defendant argues that "criminal negligence" is a necessary element of criminal conduct and, therefore, the proper standard to be applied in this case. The relator alternatively argues that "gross negligence" as provided in 46 U.S.C.A. § 2302[3] is the correct standard of proof.
Finding that the trial court correctly instructed the jury as to the level of negligence required by R.S. 34:851.6, we affirm the defendant's convictions and sentences.
Although this is the first occasion for this Court to define the term "negligent" as it is used in a statute which provides for criminal penalties, several courts from other states have interpreted similar language. In State v. Stevens, 150 Vt. 251, 552 A.2d 410 (Vt.1988), the Supreme Court of Vermont construed the following statute: "No person shall operate a motor vehicle on a public highway in a careless or negligent manner ... or in any manner to endanger or jeopardize the safety, life or property of a person." 23 V.S.A. § 1091(a). The court held "the requisite level of culpability under the section is `ordinary negligence such as would impose civil liability and ... to support a conviction... there is no necessity for the State to produce evidence tending to show criminal negligence ...'. State v. LaBonte, 120 Vt. 465, 468-69, 144 A.2d 792, 794-95 (1958)." Stevens, 552 A.2d at 411. The court in LaBonte, disapproved some courts' interpretation of the term "negligence" as implying criminal negligence. The court held "it is now well settled that it is within the power of the legislature to declare an act criminal irrespective of the intent of knowledge of the doer of the act [citations omitted]. Furthermore, the power of a legislature to define a crime based upon ordinary negligence has been recognized in numerous jurisdictions." [citations omitted]. LaBonte, 144 A.2d at 794.
The negligent homicide statute in Michigan contained language very similar to the negligent homicide statute at issue in the present case. The negligent homicide statute in Michigan provided:
Any person who, by the operation of any vehicle upon any highway or upon any other property, public or private, at an immoderate rate of speed or in a careless, reckless or negligent manner, but not willfully or wantonly, shall cause the death of another, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than two years or by a fine of not more than *1142 $2,000, or by both such fine and imprisonment. M.C.L. § 750.324; M.S.A. § 28.556.
The court in People v. Abramczyk, 163 Mich.App. 473, 415 N.W.2d 249 (Mich.App. 1987) interpreted this statute to require only proof of ordinary negligence. "Because the offense is a statutory crime, the legislature has the power to define it without regard to the presence or absence of criminal intent or culpability in its commission." Abramczyk, 415 N.W.2d at 251. The court referred to an earlier Michigan Supreme Court opinion which noted "the number of deaths resulting from automobile accidents" and concluded that the legislature was "prompted to pass a law to curb reckless, careless, and negligent driving which caused death, in cases where the negligence was less than gross." People v. McMurchy, 249 Mich. 147, 228 N.W. 723 (Mich.1930). The court in McMurchy held:
The law is well settled that the legislature, in the exercise of its police power in order to preserve the health, morals, and safety, may constitute something to be a crime that theretofore was not criminal. It may impose a criminal responsibility to a tort that theretofore carried with it only civil liability. 249 Mich. at 162, 228 N.W. at 723.
In People v. Pociask, 14 Cal.2d 679, 96 P.2d 788 (1939), the defendant was found guilty of negligent homicide. The negligent homicide statute in California provided that any person operating a vehicle in a negligent manner or in the commission of an unlawful act not amounting to a felony which resulted in the death of another person would be found guilty of negligent homicide. The trial court instructed the jury that a finding of guilty as charged may be returned if the jury found that the defendant was guilty of "negligence resulting from a failure to exercise ordinary care under all the facts and circumstances." The defendant in that case argued, as the relator in the present case does, that the term "negligent" must be read in conjunction with the penal code to mean "criminal negligence." The court in Pociask, responded:
But, in answering the question of what constitutes criminal negligence, the court is bound to apply an appropriate definition enacted by the legislature. Only when the legislature has not properly defined a term is it necessary for the courts to look to the meaning thereof as understood in the common law ... It is within the function of the legislature to make laws defining what breaches of the public peace shall be made punishable. Accordingly it may specify various degrees of the same crime and require a different measure of punishment for each. It is apparent that by the enactment of Section 500 of the Vehicle Code [the negligent homicide statute] the legislature has specified a lesser degree of punishment when the homicide is committed in the doing of an unlawful act not amounting to a felony while operating any vehicle, or while driving in a negligent manner, than is meted out in the cases of homicides otherwise committed in the doing of an unlawful act not amounting to felony or without due caution and circumspection ... When the legislature has so spoken and the court has stated the law to the jury in the language of the applicable statutes, it is not required to do more. Pociask, at 791-792.
The Court concluded that the trial court did not err by refusing the requested instruction which contained a definition of "criminal negligence."
In Commonwealth v. Berggren, 398 Mass. 338, 496 N.E.2d 660 (Mass.1986), the defendant was convicted of motor vehicle homicide by negligent operation of a motor vehicle so as to endanger public safety. The court found that a finding of ordinary negligence sufficed to establish the violation of the statute. The court stated "a showing of ordinary negligence has generally been held or recognized as sufficient to convict an accused under a `vehicular negligent homicide statute' where [as in Massachusetts] the term `negligence' appears without qualification or modification." Berggren, 496 N.E.2d at 661.
*1143 In State v. Smith, 90 N.C.App. 161, 368 S.E.2d 33 (N.C.App.1988), the Court of Appeals of North Carolina interpreted the "misdemeanor death by vehicle" statute. That statute provides:
A person commits the offense misdemeanor death by vehicle if he unintentionally causes the death of another person while engaged in the violation of any State law or local ordinance applying to the operation or use of a vehicle or to the regulation of traffic, other than impaired driving under G.S. 20-138.1, and commission of that violation is the proximate cause of the death. General Statute 20-141.4(a2)
The court narrowed the issue before it to whether a conviction under this statute may be based upon a finding of ordinary negligence. The court stated, "Several other jurisdictions permit convictions under vehicular homicide statutes based upon a showing of ordinary negligence ... other states courts that have considered the question have ruled that it is constitutionally permissible to base a vehicular homicide conviction on ordinary negligence." [citations omitted] Smith, 368 S.E.2d at 37. The court held that "ordinary negligence" was the proper standard.
Likewise, in Egle v. People, 159 Colo. 217, 411 P.2d 325 (Colo.1966), the Supreme Court of Colorado upheld the conviction of a person charged with causing the death of another person by driving in a careless manner while operating an automobile while under the influence of intoxicating liquor. The statute under which the defendant was charged read, in pertinent part, "[a]ny person while under the influence of intoxicating liquor ... who causes the death of another by operating or driving any automobile ... in a reckless, negligent or careless manner, or with a wanton or reckless disregard of human life or safety, shall be deemed guilty of a felony ...". C.R.S. '53, 40-2-10. The defendant argued in that case that the trial court erred in instructing the jury as follows:
Criminal negligence is the failure to exercise for the protection of others, the care and caution that would be exercised by an ordinarily prudent person under the same circumstances. The failure to do what an ordinarily careful and prudent person would have done under all of the circumstances of the case, or the doing of something that an ordinarily prudent person would not have done under all the circumstances of the case is criminal negligence. Egle, 411 P.2d at 327.
The court concluded that a showing of simple negligence was sufficient to support the conviction and that a trial judge's jury charge was, therefore, a correct statement of the law.
The State of Utah adopted a automobile homicide statute "almost bodily and verbatim from the Colorado statute." In State v. Johnson, 12 Utah 2d 220, 364 P.2d 1019 (Utah 1961), the court interpreted the phrase "reckless, negligent or careless" to require proof only of ordinary negligence. The court concluded:
It seems evident that our legislature has concluded that the time has now come when we must recognize that any kind of vehicular negligence, mingled with gas and booze, produces a lethal mixture that, if it caused death, should penalize to a greater degree than before, the mobile, tipsy vehicle-operating brew-master, in order to bring to a screeching halt the mounting holocaust daily dedicated to traffic fatalities. Johnson, 364 P.2d at 1020.
In United States v. McHugh, 103 F.Supp. 740 (W.D.Pa.1952), the court interpreted the Motorboat Act of 1940 to require only a showing of mere negligent operation rather than criminal negligence. The Act provided "[a]ny person who shall operate any motorboat or any vessel in a reckless or negligent manner so as to endanger the life, limb, or property of any person shall be deemed guilty of a misdemeanor...". 46 U.S.C.A. § 526m. The court held that the act specifically provided for criminal penalties for any person who operated a motorboat in a reckless or negligent manner so as to endanger the life limb or property of any person. The court found that the plain language of the act *1144 would allow a conviction based on mere negligent operation.
In State v. Russo, 38 Conn.Supp. 426, 450 A.2d 857 (Conn.Supp.1982), the defendant was convicted, after a jury trial, of negligent homicide with a motor vehicle. That statute provided, "A person is guilty of negligent homicide with a motor vehicle when in consequence of the negligent operation of a motor vehicle he causes the death of another person." G.S. 53a-58a. The court held that this crime has three elements, "(1) the death of a person; (2) by the instrumentality of a motor vehicle; (3) which is operated in a negligent manner." Russo, 450 A.2d at 863. The court defined negligence as "the failure to use that degree of care for the protection of another that the ordinarily reasonably careful and prudent man would use under like circumstances." Russo, 450 A.2d at 862. The court rejected the defendant's challenges to the constitutionality of the statute on the grounds that the statute created an unreasonable and arbitrary classification and was void for vagueness.
The defendant in State v. Woodington, 31 Wis.2d 151, 142 N.W.2d 810 (Wis.1966), was convicted of filing a false or misleading statement with the Wisconsin Department of Securities. The statute under which the defendant was convicted provided for criminal penalties for "any person who directly or indirectly: ... (d) File or cause to be filed with the department any statement or representation of a material fact, which statement or representation he knows or in the exercise of reasonable care should know to be false or misleading." Sec. 189.19(2)(d). The court interpreted this language to require only a finding of ordinary negligence to convict under this statute. The court stated:
Because of the legislative concern for the welfare of the public, the burden imposed-to exercise ordinary careis neither ambiguous, uncertain, nor unfair. Where the substantial protection of the public welfare is concerned the legislature can, in the proper exercise of the police power, constitutionally prohibit, by criminal statute, negligent conduct which would be detrimental to this public interest. Woodington, 142 N.W.2d at 826
Likewise, in State v. Miles, 203 Kan. 707, 457 P.2d 166 (Kan.1969), the defendant was convicted of negligent homicide. Negligent homicide was defined in Kansas as "when the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in negligent disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide." K.S.A. 8-529. The court concluded that the legislature intended to provide criminal penalties when ordinary negligence on the part of a driver in the operation of his vehicle proximately results in death to another person. The court quoted extensively from a earlier opinion in State v. Ashton, 175 Kan. 164, 262 P.2d 123 (Kan.1953):
[it] prohibits the negligent driving of a vehicle (a) when the negligence is such as to be in the disregard of the safety of others and (b) where such conduct is the proximate cause of death which ensues within one year. It is clear the legislature did not attempt to specify in detail the innumerable and variable circumstances, conditions, acts and omissions from which death might result from vehicular traffic. It undertook to enact a statute sufficiently broad to encompass negligent acts and omissions of all kinds and character from which death ensued when committed in disregard of the safety of others. It is a police measure designed to protect the public from the constantly mounting death toll resulting from vehicular traffic. In order to prevent or decrease these direful results the law, of necessity, had to be broad and general in its reach ... Manifestly, no legislature could accurately anticipate every possible circumstance or contingency which might arise and legislate specifically concerning it. That would be true concerning speed and all other factors which might become involved in highly dissimilar circumstances.
Ashton, 175 Kan. at 170-172, 262 P.2d at 128-129. See also State v. Randol, 226 Kan. 347, 597 P.2d 672 (Kan.1979).
*1145 Several other state courts have interpreted language in a penal statute to require only ordinary negligence. In State v. Arena, 46 Haw. 315, 379 P.2d 594 (Hawaii 1963), the Supreme Court of Hawaii interpreted the negligent homicide statute as requiring a showing of only ordinary negligence on the part of the offending operator. In Owens v. Commonwealth, 487 S.W.2d 897, 900 (Ky.1972), the court delineated the essential elements of negligent homicide, stating that negligent operation of a motor vehicle was defined as "failure to use ordinary care." In Sanderson v. United States, 125 A.2d 70 (D.C.Mun.App. 1956), the court stated that prosecutions under the negligent homicide statute require three elements: "(1) the death of a human being, (2) by instrumentality of a motor vehicle, (3) operated at an immoderate speed or in a careless, reckless or negligent manner, but not willfully or wantonly." Sanderson, 125 A.2d at 73.
Our research of this question revealed only one case where a court held that such a statute was unconstitutional because it imposed criminal liability for negligent conduct. In Commonwealth v. Heck, 341 Pa.Super. 183, 491 A.2d 212 (Pa.Super.1985), the court interpreted 75 Pa.C.S. 3732 which defines the offense of vehicular homicide:
Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death.
The court held:
We are led to the inevitable conclusion that a conviction for violating the vehicular homicide law carries with it the stamp of criminality and the kind of opprobrium that under the common law was reserved for true crimes of moral turpitude ... In a fundamental sense the harshness of criminal punishment is fitting only for these types of consciously inflicted wrongs, and so traditionally the criminal law has concerned itself exclusively with conscious wrongdoing ... [citations omitted] Of course, when someone is killed through inadvertence or negligence, monetary recovery can never make up for the loss. But even though there may be an unreasoning desire for retribution on the part of the victim's heirs, it can serve no rational purpose of the criminal law to subject the merely negligent actor to the additional punitive sanctions of the criminal law. [citations omitted] Heck, 491 A.2d at 223-224.
The court concluded that this statute requires a showing of criminal negligence rather than ordinary negligence.
The Supreme Court of Pennsylvania affirmed the Superior Court's decision in Heck. Commonwealth v. Heck, 517 Pa. 192, 535 A.2d 575 (Pa.1987). The court held that ordinary negligence was insufficient to sustain a conviction of homicide by vehicle. The court stated, "The Legislature clearly did not intend the phrase `negligently' to encompass the tort liability concept of negligence." Heck, 535 A.2d at 580. The court defined the term negligently as "a gross deviation from the standard of care that a reasonable person would observe in the actor's situation." Heck, 535 A.2d at 580. According to the court, a conviction may be sustained only if the Commonwealth's evidence established that the actor was reckless or criminally negligent.
The relator in the instant case argues that criminal negligence is an essential element of criminal conduct and, therefore, is the correct standard to apply in the present case. However, this contention requires this Court to interpret the word "negligence" to mean "criminal negligence," a meaning clearly inconsistent with the unambiguous terms of the statute. LSA-R.S. 14:3 requires that all provisions of the criminal code "shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the contents, and with reference to the purpose of the provisions."
We agree with the well-reasoned opinion of the Second Circuit, where the court stated

*1146 In defining the crime charged here in broader terms and in using the term "negligence" rather than "criminal negligence", the legislature obviously intended a different standard for negligent homicide in the statutes dealing with boating than for negligent homicide as included in the criminal code, LSA-R.S. 14:32, which defines negligent homicide as the killing of a human being by criminal negligence. The maximum penalty under the boating statute is substantially less than under the criminal code, one year without hard labor and/or a fine of $1,000 as compared to five years with or with (sic) hard labor and/or a fine of $5,000. The lesser penalty is strongly indicative of a legislative intent to proscribe less egregious conduct under the boating statute. State v. Ritchie, at 657.
The relator further argues that 46 U.S.C.A. § 2302, the federal statute setting forth penalties for negligent operation, should guide this Court in determining the proper standard of negligence. However, that statute does not punish conduct which results in the death of another person. Such a crime is set forth in 18 U.S.C.A. § 1115. That statute provides a fine of not more than $10,000 or imprisonment for not longer than ten years, or both for "every captain, engineer, pilot, or other person employed on any steamboat or vessel, by whose misconduct, negligence, or inattention to his duties on such vessel the life of any person is destroyed ...". Cases interpreting this statute have generally not required a showing of criminal negligence in order to convict a defendant. See U.S. v. Keller, 19 F. 633 (C.C.W.Va.1884).
The Louisiana Legislature enacted R.S. 34:851.6 which clearly provides that the negligent operation of a watercraft which results in the death of a person is sufficient to constitute negligent homicide. In using the term "negligence" rather than "criminal negligence," as is used in R.S. 14:32, the legislature obviously intended a different standard for negligent homicide under Title 34. A review of similar legislation enacted in other states, as discussed above, indicates that the term "negligence" is often interpreted as "ordinary negligence" even if criminal penalties are involved. Furthermore, the lesser penalty for a conviction of R.S. 34:851.6 (a maximum of one year imprisonment) compared with a maximum of five years imprisonment for a violation of R.S. 14:32 is further evidence of the legislature's intent to proscribe ordinary negligence by an operator of a watercraft which results in the death of another person. Cf. State v. Grover, 437 N.W.2d 60 (Minn.1989).
Accordingly, we conclude that the term "negligence," as used in R.S. 34:851.6, should be interpreted as ordinary negligence, as that term is commonly understood. The trial judge's instruction to the jury, therefore, was a correct statement of the applicable law.
THE CONVICTION AND SENTENCE ARE AFFIRMED.
DENNIS and WATSON, JJ., dissent with reasons.
LEMMON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
Negligence as an element of a criminal offense cannot be defined in the same terms as that used for negligence in a civil action. See, for example, State v. Clark, 118 Utah 517, 223 P.2d 184 (1950); State v. Taylor, 59 Idaho 724, 87 P.2d 454 (1939); People v. Angelo, 246 N.Y. 451, 159 N.E. 394 (1927) and State v. Rountree, 181 N.C. 500, 106 S.E. 669 (1921). The trial court erred in not charging the jury correctly about criminal negligence, which is defined statutorily in Louisiana as "a gross deviation" below a reasonable standard of care. LSA-R.S. 14:12.
I respectfully dissent and would order a new trial.

ON REHEARING
LEMMON, Justice.
We granted certiorari primarily to determine (1) whether the Legislature, in defining the misdemeanor of negligent homicide in the operation of a watercraft in La.Rev. *1147 Stat. 34:851.6 to include "operation of any watercraft ... in a careless, reckless or negligent manner", intended to proscribe ordinary negligence, and (2) whether the terms "immoderate rate of speed" and "careless, reckless or negligent manner" meet the state and federal constitutional standards of certainty and clarity required of criminal statutes by State v. Dousay, 378 So.2d 414 (La.1979), and Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).[1]

Procedural History
After the presentation of evidence at trial, the judge explained to the jury the essential elements of the crime.[2] The judge instructed the jury that one element of the crime was satisfied if the jurors found that "the defendant's operation of the watercraft was at an immoderate rate of speed or that the defendant's operation of the watercraft was in a careless, reckless or negligent manner."[3] The jury returned a unanimous verdict of guilty as charged.
On appeal defendant argued among other things that the Legislature, in enacting La.Rev.Stat. 34:851.6, intended to require criminal negligence, rather than ordinary negligence, for the commission of the crime. The court of appeal affirmed the conviction, holding that the Legislature, by using the term "negligence" instead of "criminal negligence", intended a different standard for negligent homicide in the sections of Title 34 governing watercraft than for negligent homicide in the Criminal Code, in which La.Rev.Stat. 14:32 defines negligent homicide as the killing of a human being by criminal negligence. 556 So.2d 651. The court noted that the maximum penalty under the watercraft statute was one year without hard labor and a fine of $1,000, as compared to the penalty for criminally negligent homicide under the Criminal Code of five years with or without hard labor and a fine of $5,000. The court opined that this difference in severity of sanctions was "strongly indicative of a legislative intent to proscribe less egregious conduct under the boating statute." 556 So.2d at 657.
As noted above, we initially granted certiorari to address defendant's contentions pertaining to legislative intent and to the constitutional vagueness of the statute. 563 So.2d 888. On original hearing, we agreed with the appellate court's construction of the statute to require only ordinary negligence and found that "negligent" is a *1148 sufficient (and therefore not unconstitutionally vague) standard as used in this criminal statute. We granted rehearing to reconsider these issues.

Careless, Reckless or Negligent Manner
A crime is conduct legislatively defined as criminal. La.Rev.Stat. 14:7. Louisiana criminal statutes generally include a requirement of either specific or general criminal intent within the definition of a particular crime. However, criminal conduct may also consist of an act or failure to act that produces criminal consequences without a requirement of criminal intent. La.Rev.Stat. 14:8(2). Nevertheless, La. Rev.Stat. 14:11, in distinguishing crimes requiring criminal intent from those in which no intent is required, provides that "[s]ome crimes consist merely of criminal negligence that produces criminal consequences." (emphasis added). From these provisions under the section entitled "Elements of Crimes", one could reasonably conclude that criminal conduct normally requires either criminal intent or criminal negligence, which is defined by La.Rev. Stat. 14:12 as:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.[4]
The court of appeal, in interpreting legislative intent, focused on the absence of the modifier "criminally" before the word "negligent" in La.Rev.Stat. 34:851.6 and on the lesser penalty as compared to the penalty in the negligent homicide statute in the Criminal Code. The court noted that the lesser penalty in the watercraft statute was strongly indicative that the Legislature intended to proscribe a lesser degree of negligence. There are, however, other factors to be considered.
In State v. Jones, 298 So.2d 774 (La. 1974), this court equated the term "recklessness" with "criminal negligence" and "gross negligence." See also State v. Dean, 154 La. 671, 98 So. 82 (1923). In Jones, the defendant was charged with negligent homicide, defined by La.Rev.Stat. 14:32 as "the killing of a human being by criminal negligence." This court, referring to Restatement (Second) of Torts § 500(g) (1934) to distinguish reckless misconduct from negligent misconduct by the degree of the risk, noted that reckless misconduct consists of an intentional reckless act which the actor knows or should know creates a strong probability that harm may result, while negligent misconduct consists of mere inadvertence, incompetence, unskillfulness or a failure to take precautions to enable the actor to cope adequately with a possible or probable future emergency. Id. at 775. Stating that the prosecutor is required to show more than a mere deviation from the standard of ordinary care, the court held that the defendant's loss of control, in moving back into the driving lane during a passing maneuver on a two-lane highway upon seeing an approaching vehicle, did not constitute criminal negligence when the evidence showed that the defendant was not intoxicated and was traveling within the posted speed limit.
The Legislature, in enacting La.Rev.Stat. 34:851.6, provided that one means for commission of that crime was by causing a death while operating a watercraft in "a careless, reckless or negligent manner." Viewed in the legislative and jurisprudential context discussed above, the Legislature's parallel use of the three adjectives, after this court had equated recklessness with criminal negligence in Jones, indicates an intention to proscribe conduct more offensive than mere inadvertence.[5]
Significantly, the Legislature did not specifically express an intent to depart from *1149 its well-established pattern of proscribing only criminal negligence. If the Legislature had intended to change the established connotation of recklessness and negligence, it could have spoken with much more certainty rather than simply omitting the modifier "criminally" when using the term "negligent" in parallel with the term "reckless", the meaning of which had been established in State v. Jones, 298 So.2d 774 (La.1974).
In the absence of a clear legislative intent to the contrary, the three adjectives should be construed in a similar fashion to require the prosecutor to prove a degree of carelessness or negligence equivalent to "recklessness", which involves "such a disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." La.Rev.Stat. 14:12. Had the Legislature intended to make criminal any death produced by mere carelessness or ordinary negligence, the term "reckless" would not likely appear in the context in which it is found in this statute.[6]
Additionally, the crime of negligent homicide in the Criminal Code prohibits a broad range of killings by criminal negligence such as by reckless operation of a vehicle, reckless use of a firearm, and the like. See La.Rev.Stat. 14:32, Reporter's Comment. The broad penalty range of the negligent homicide statute in the Criminal Code is consistent with the broad range of prohibited conduct. On the other hand, La.Rev.Stat. 34:851.6 focuses on the much narrower problem of homicides caused by operation of a watercraft, which is subject to a much lesser degree of governmental control (such as posted speed limits, prohibition of specific conduct such as crossing the center line and the like) than is operation of motor vehicles. The narrower penalty range in the watercraft statute is consistent with the narrower scope of the statute. This conclusion is also consistent with the placement of the crime definition under the Title of the Revised Statutes on watercraft, rather than in the Criminal Code.
The decision on rehearing in this case is also consistent with the approach taken by this court in State v. Taylor, 463 So.2d 1274 (La.1985). The Taylor decision interpreted the vehicular homicide statute so as to include the requirement that the alcohol-influenced condition of the accused caused the fatal accident. Although the statute literally could have been interpreted to apply whenever a homicide occurred during the accused's alcohol-influenced operation of his vehicle, regardless of whether or not any fault on his part contributed to the causation of the death, we declined to attribute to the Legislature an intent to impose criminal liability based solely on the coincidental fact that the fatal accident occurred (without fault on the part of the accused) while the accused was operating a vehicle under the influence of alcohol. See also State v. Brown, 389 So.2d 48 (La.1980) (the statute prohibiting possession of pentazocine impliedly requires knowledge by the accused of the nature of the substance possessed, since a contrary interpretation would offend principles of due process). The underlying rationale of Taylor and Brown suggests that this court should not interpret a criminal statute so as to eliminate a criminal mental element in the absence of express legislative intent to do so.
Arguably, the Legislature may define as criminal conduct the mere inadvertent act or omission during the operation of a watercraft which results in a death.[7] However, the Legislature did not expressly do so in enacting La.Rev.Stat. 34:851.6, and we decline to ascribe to the Legislature *1150 such an intent in the absence of a clear expression.
We therefore conclude that La.Rev.Stat. 34:851.6 requires criminal negligence as an essential element of the crime committed by the "careless, reckless or negligent" operation of a watercraft and that the trial judge erred in instructing the jurors that they could return a verdict of guilty if they found simply that defendant did an act "which an ordinarily careful, prudent man under like circumstances would not do...." See footnote 3.

Immoderate Rate of Speed
If on remand the prosecutor decides to retry defendant under the same statute and if defendant is again convicted, this court will again be called upon to determine whether La.Rev.Stat. 34:851.6 provides adequate standards to determine the guilt or innocence of this accused under State v. Dousay, 378 So.2d 414 (La.1979), State v. Gill, 441 So.2d 1204 (La.1983), and State v. Liuzza, 457 So.2d 664 (La.1984). Because the lower courts have already ruled on this issue and because we believe those ruling were palpably wrong, we deem it appropriate to address the constitutional issue at this time rather than after a second conviction.
La.Rev.Stat. 34:851.6 permits a jury to convict an accused who causes the death of a person by the operation of any watercraft either "at an immoderate rate of speed" or "in a careless, reckless, or negligent manner." (emphasis added). In conformity with this statutory language, the trial judge instructed the jurors that they could convict defendant on each of the three counts if they found that "defendant's operation of the watercraft was at an immoderate rate of speed" and that the operation of the watercraft in that manner caused the deaths of the victims.[8] (emphasis added). Therefore, a juror could have voted to convict defendant solely on the finding that the speed of the boat was "immoderate," even if the juror was not satisfied that defendant was careless, reckless or negligent.
The state and federal constitutions "require that a criminal enactment contain an ascertainable standard of guilt that is not so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each case." State v. Liuzza, 457 So.2d 664, 665 (La.1984), quoting from Giaccio v. Pennsylvania, 382 U.S. 399 at 403, 86 S.Ct. 518 at 520-21, 15 L.Ed.2d 447 (1966) (the term "substantial", as used in the pandering statute to proscribe receiving a certain amount of support or maintenance from the earnings of a person engaged in prostitution, was unconstitutionally vague in that the term failed to provide an ascertainable standard of guilt). In order to decide whether a statute uses terms which adequately "mark the boundaries" between criminal and non-criminal conduct, a court must determine whether the statutory terms have such a clear meaning that "men of common intelligence" will not "necessarily guess at their meaning and differ as to their application." State v. Union Tank Car, Inc., 439 So.2d 377, 385 (La.1983).
The cases pertaining to the constitutional requirement of certainty do not form a seamless web.[9] As this court noted in State v. Jackson, 404 So.2d 952, 953 (La. 1981), words which may be vague and indefinite "when considered in the abstract" may nevertheless provide sufficient guidance when "considered with the particular *1151 conduct they are used to describe." See also State v. Liuzza, 457 So.2d 664 (La. 1984). Thus, we must consider the use of the term "immoderate rate of speed" in the context within which it is used in the statute here at issue.
The trial judge defined the phrase "immoderate rate of speed" as "speed in excess of that which is moderate considering the time, place, and circumstances." The term "immoderate" is otherwise defined as "exceeding normal or appropriate bounds; extreme" and as "not moderate; exceeding just or reasonable limits; excessive; extreme." American Heritage Dictionary (3d ed. 1982); Random House Dictionary of the English Language (unabridged ed. 1966).
Considering the term "immoderate" as a modifier of the word "speed" when used in connection with the operation of a watercraft, we conclude that "immoderate" fails to illuminate with a sufficient degree of clarity the boundary between criminal and non-criminal conduct that the constitutional guarantee of certainty demands. The Legislature cannot impose criminal liability for deaths caused by operation of a watercraft at a speed that merely exceeds that which is "normal" (or that which is "appropriate") without providing more guidance regarding the standards to be used in determining what constitutes a "normal," "appropriate," or "moderate" speed in the many and varied contexts in which watercraft are operated on the waterways of this state.[10] The parameters of the term "immoderate" are simply too broad to give fair notice of the proscribed conduct or to provide ascertainable standards for jurors to determine what conduct is prohibited. The factfinder must necessarily guess at the meaning of "immoderate" in deciding whether to convict. Because reasonable jurors may differ greatly over whether a particular speed constitutes an "immoderate rate of speed" under given circumstances unless the term is further defined, this term in the context of this statute is unconstitutionally vague.
Our decision that the phrase "immoderate rate of speed" fails to give fair notice and to provide ascertainable standards of guilt does not require that we declare the statute unconstitutional in its entirety. As this court recently said in State v. Azar, 539 So.2d 1222, 1226 (La. 1989):
The unconstitutionality of one portion of a statute does not necessarily render the entire statute unenforceable. If the remaining portion of the statute is severable from the offending portion, this Court may strike only the offending portion and leave the remainder intact. State v. Williams, 400 So.2d 575 (La. 1981). The test for severability is whether the unconstitutional portions of the statute are so interrelated and connected with the constitutional parts that they cannot be separated without destroying the intention manifested by the legislature in passing the act. Cobb v. Louisiana Board of Institutions [237 La. 315], 111 So.2d 126 (La.1958).
In this case, as in Azar, the "immoderate rate of speed" means of committing the offense is clearly separate and distinct from the "careless, reckless, or negligent" means of commission, and thus can be stricken without affecting the remainder. Thus, the separable portion of the statute remains unaffected by our decision.

Decree
Accordingly, the judgment of the court of appeal is reversed, the conviction is set aside, the term "immoderate rate of speed" is struck from the statute as unconstitutionally vague, and the case is remanded for a new trial.
*1152 CIACCIO, J., dissents.
MARCUS and COLE, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
I disagree with the majority's conclusion that La.R.S. 34:851.6 requires criminal negligence as an essential element of the crime. The language of the statute is clear and unambiguous, and applies to any person "who by the operation of any water craft ... in a careless, reckless, or negligent manner shall cause the death of another...." (emphasis added). The statute deals with three distinct types of conduct. In using the term "negligent," the legislature obviously intended to apply a different standard than the criminal negligence required for negligent homicide under La. R.S. 14:32. La.R.S. 34:851.6, a misdemeanor, carries a maximum sentence of one year imprisonment, whereas La.R.S. 14:32, a felony, carries a maximum of five years imprisonment. Since La.R.S. 14:32 can apply to the same fact situations as La.R.S. 34:851.6, it would not make sense for the legislature to enact a statute covering virtually identical conduct, but with a lesser penalty.[1] As we noted in our original opinion, many other states have interpreted the term "negligence" to refer to ordinary negligence, even if criminal penalties are involved. In fact, it is noteworthy that the majority does not object to the term "negligence" on constitutional grounds, and concedes that "the Legislature may define as criminal conduct the mere inadvertent act or omission during the operation of a watercraft which results in death." I believe that is exactly what the legislature has done in La.R.S. 34:851.6.
Further, I believe the majority, having reversed the conviction on statutory interpretation grounds, errs in reaching the constitutionality of the statute and striking the term "immoderate rate of speed." In my view, the phrase "immoderate rate of speed" when considered in the context of operating a water craft that causes the death of another is not vague and indefinite. The trial judge defined "immoderate speed" as "speed in excess of that which is moderate, considering time, place and circumstances." As the majority indicates, the term "immoderate" is defined in the dictionary as "exceeding normal or appropriate bounds; extreme" and as "not moderate; exceeding just or reasonable limits; excessive; extreme." I see no difference in degree of clarity or broadness between the phrase "immoderate rate of speed" and "careless, reckless, or negligent manner."
Accordingly, I respectfully dissent.
COLE, Justice, dissenting.
The Court today invalidates, as unconstitutionally vague, the portion of La.Rev. Stat. § 34:851.6 which provides "[a]ny person who by the operation of any watercraft at an immoderate rate of speed ... shall cause the death of another shall be guilty of the crime of negligent homicide...." The Court also determines that the legislature, in drafting the statute to penalize those "who by the operation of any watercraft... in a ... negligent manner ... cause the death of another ...," intended to penalize only criminal negligence, as defined in La.Rev.Stat. § 14:12. Because I believe the statute passes constitutional muster, and because I believe the legislature intended to proscribe ordinary negligence as well as criminal negligence, I respectfully dissent.

I.
The guarantee of procedural due process... requires that a criminal enactment contain an ascertainable standard of guilt that is not "so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case."
State v. Liuzza, 457 So.2d 664, 665 (La. 1984) (quoting Giaccio v. Pennsylvania, 382 U.S. 399, 403, 86 S.Ct. 518, 520-21, 15 *1153 L.Ed.2d 447 (1966)). "A statute must `give individuals adequate notice of the conduct prohibited by law.'" Liuzza, supra, at 665-66 (quoting State v. Farris, 412 So.2d 1039, 1040 (La.1982)). "Adequate notice consists of language which allows ordinary men of reasonable intelligence to understand and obey the law." Liuzza, supra, at 666; see also State v. Stilley, 416 So.2d 928 (La.1982); State v. Dousay, 378 So.2d 414 (La.1979). Courts must generally determine whether men of common intelligence must "necessarily guess at [the meaning of the statutory terms] and differ as to their application." State v. Union Tank Car, Inc., 439 So.2d 377, 385 (La. 1983).
This Court has also recognized that the so-called void-for-vagueness doctrine is not a concept of definite and unchanging content. Balanced against the requirement that statutes must neither forbid nor require the doing of an act in terms so vague that men of common intelligence must necessarily guess at the meaning and differ as to the application is the observation that "`the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or short imprisonment ...; he may incur the penalty of death.'" State v. Lindsey, 310 So.2d 89, 91 (La.1975) (quoting Nash v. United States, 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913)). As the Court noted in Lindsey, drawing a line between statutory language so vague as to be unconstitutional and phraseology that exhibits one of the instances whereby a citizen may rightfully be required to proceed with his questionable conduct at his own risk can be a difficult task.
In this case, I do not find the task quite so daunting as does the majority, nor do I believe the statute in question is so vague that men of common intelligence must necessarily guess as to the meaning of its terms or differ as to its application. Neither do I agree that the jury in this case was left with unfettered, standardless discretion to determine what conduct was prohibited. Rather, employing the dictionary definitions of the term "immoderate" quoted by the majority, i.e., "extreme, exceeding just or reasonable limits, or excessive," I believe the jury could reasonably have determined that travelling in a speed boat at 45 m.p.h. through the intersection of two waterways is extreme or excessive considering the time, place, and circumstances, and that the defendant was reasonably placed on notice that this type of conduct violates the law. I find the terminology employed by the legislature here no more vague than the Court found the term "unlawful purpose" in the context of the simple kidnapping statute upheld in State v. Gill, 441 So.2d 1204, 1206-07 (La.1983).

II.
The Court today determines the term "negligent" in the statute at issue requires the state to prove beyond a reasonable doubt that a defendant charged with violating the statute acted in a criminally negligent manner. I believe, as did the court of appeal, that the conduct declared criminal by one operating a motor boat is measured by an ordinary or civil negligence standard, i.e., failure to act with due care under the circumstances. See State v. Ritchie, 556 So.2d 651, 657-58 (La.App. 2d Cir.1990).
The contention that criminal negligence is an essential element of criminal conduct requires interpreting the word "negligence" to mean "criminal negligence," a meaning clearly at odds with the unambiguous terms of the statute. Our criminal code requires that all of its provisions "shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the contents, and with reference to the purpose of the provisions." La.Rev. Stat. § 14:3. I agree with the court of appeal that
[i]n defining the crime charged here in broader terms and in using the term "negligence" rather than "criminal negligence", the legislature obviously intended a different standard for negligent homicide in the statutes dealing with boating than for negligent homicide as included in the criminal code, LSA-R.S. *1154 14:32, which defines negligent homicide as the killing of a human being by criminal negligence. The maximum penalty under the boating statute is substantially less than under the criminal code, one year without hard labor and/or a fine of $1,000 as compared to five years with or with[out] hard labor and/or a fine of $5,000. The lesser penalty is strongly indicative of a legislative intent to proscribe less egregious conduct under the boating statute.
Ritchie, supra, at 657.
In using the term "negligence" rather than "criminal negligence," as is used in § 14:32, the legislature indeed intended a different standard for negligent homicide under Title 34. A review of similar legislation enacted in other states[1] indicates the term "negligence" or "negligent" is often interpreted as "ordinary or civil negligence" even if criminal penalties attach for a violation. In addition, I find compelling the legislative determination to impose a substantially less severe penalty for violating § 34:851.6 than for violating § 14:32. Since the term "negligence" as used in § 34:851.6 should be interpreted as "ordinary negligence," I believe the trial court's instruction to the jury in this case was a correct statement of the law.

III.
I would hold that the term "negligent" in the statute was intended by the legislature to mean ordinary negligence, not criminal negligence, and I would uphold the statute against constitutional challenge. Hence, I would affirm both the convictions and the sentences.
NOTES
[*] Judge Philip C. Ciaccio of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justice pro tempore, sitting for Associate Justice Pike Hall, Jr., recused.
[1] LSA-R.S. 34:851.6 provides:

Section 851.6 Negligent Homicide
Any person who by the operation of any water craft at an immoderate rate of speed or in a careless, reckless, or negligent manner shall cause the death of another, shall be guilty of the crime of negligent homicide, punishable by imprisonment of not more than one year, or by a fine of more than $1,000, or both.
[2] LSA-R.S. 14:12 provides:

Section 12Criminal Negligence
Criminal negligence exists when, although neither specific or general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
[3] 46 U.S.C.A. § 2302 provides, in pertinent part:

§ 2302. Penalties for negligent operations
(a) A person operating a vessel in a negligent manner that endangers the life, limb, or property of a person is liable to the United States Government for a civil penalty of not more than $1,000.
(b) A person operating a vessel in a grossly negligent manner that endangers the life, limb, or property of a person shall be fined not more than $5,000, imprisoned for not more than one year, or both.
[1] La.Rev.Stat. 34:851.6 provides:

Any person who by the operation of any watercraft at an immoderate rate of speed or in a careless, reckless, or negligent manner shall cause the death of another shall be guilty of the crime of negligent homicide, punishable by imprisonment of not more than one year, or by a fine of not more than one thousand dollars, or both.
[2] The evidence established that defendant was operating a boat at about forty-five miles per hour on Lake Bistineau. He passed another boat as he rounded the intersection of two bodies of water. Rather than moving back to his right and keeping a proper lookout for oncoming traffic, defendant continued on the left side of the channel and stared back at the boat he had passed. While in this position, he ran into the side of a boat crossing the intersection. Three people in the other boat were killed in the collision.

Blood alcohol testing of defendant showed a level of 0.06 to 0.08 at the time of the accident. Urinanalysis indicated significant use of marijuana over a long period of time and possible recent use. Marijuana was found in defendant's boat after the accident.
[3] The judge defined immoderate speed, careless operation, reckless operation and negligence as follows:

"Immoderate speed" is defined as speed in excess of that which is moderate, considering time, place and circumstances.
"Careless operation" is defined as the operation of any watercraft in a careless or heedless manner so as to be grossly indifferent to the person or property of other persons, or at a rate of speed greater than will permit a person in the exercise of reasonable care, to bring the watercraft to a stop within the assured clear distance ahead.
"Reckless operation" is defined as the operation of any watercraft in such a manner as to endanger the life or limb or damage to property of any person.
"Negligence" is defined as: the omission on the part of the person to do some act which an ordinarily careful and prudent man would do under like circumstances, or the doing of some act which an ordinarily careful, prudent man under like circumstances would not do by reason of which another person is endangered in life or bodily safety.
[4] The Reporter's Comment to La.Rev.Stat. 14:12 states that "[c]riminal negligence corresponds to the concept of `gross negligence' in tort law."
[5] This is not to suggest that the conduct of the accused in this case was mere inadvertence or that the evidence in this case was not sufficient to support a finding of criminal negligence. This decision focuses on the conduct proscribed by the statute and not on the conduct proved by the evidence in this particular case.
[6] The principle of lenity directs that a court construe a criminal statute in favor of the most narrow application when there are serious doubts concerning a meaning of a term. See State v. McCarroll, 337 So.2d 475 (La.1976). Although the doctrine generally relates to the construction of the penalty provision of a statute, the same approach should be taken when a question arises as to the meaning of an otherwise ambiguous term in the definition of a crime.
[7] Of course, the Legislature in doing so must use terminology which meets the constitutional standards of certainty and clarity required of criminal statutes.
[8] The issue of causation was not contested. Compare State v. Taylor, 463 So.2d 1274 (La. 1985); State v. Martin, 539 So.2d 1235 (La. 1989); State v. Copes, 566 So.2d 652 (La.App. 2nd Cir.1990).
[9] See Hargrave, Louisiana Constitutional Law Due ProcessVagueness, 41 La.L.Rev. 544 (1980). Compare State v. Dousay, 378 So.2d 414 (La.1979), in which this court found the terms "reasonable" and "proper" to be unconstitutionally vague in the context of the Louisiana Sanitary Code, with State v. Jackson, 404 So.2d 952 (La.1981), in which this court found that those same two terms did not fail to give fair notice or set ascertainable standards of guilt in the context of the "failure to maintain control" provisions of the Louisiana Highway Regulatory Act (La.Rev.Stat. 32:58).
[10] One must question the standard by which a juror will determine what is a normal (hence, moderate) rate of speed for a watercraft on various types of waterways which are not marked with posted limits. See La.Rev.Stat. 34:851.27, which permits (with certain exceptions) governing authorities of parishes and municipalities to "establish and post speed limits on waterways within its jurisdiction" and requires such speed limits to be posted along the affected waterway. One must also question how an operator of a watercraft, which may well not be equipped with a speed registering device, will know when his craft is exceeding the "normal" or "reasonable" (hence, moderate) rate of speed. See La.Rev.Stat. 34:851.24, classification and equipment (motorcraft).
[1] The effect of the majority's opinion is to permit the state to prosecute identical conduct under two different statutes with widely divergent penalties.
[1] See, e.g., People v. Pociask, 14 Cal.2d 679, 96 P.2d 788 (Cal.1939); Egle v. People, 159 Colo. 217, 411 P.2d 325 (1966); State v. Russo, 38 Conn.Supp. 426, 450 A.2d 857 (1982); State v. Arena, 46 Hawaii 315, 379 P.2d 594 (1963); State v. Miles, 203 Kan. 707, 457 P.2d 166 (1969); Owens v. Commonwealth, 487 S.W.2d 897 (Ky.1972); Commonwealth v. Berggren, 398 Mass. 338, 496 N.E.2d 660 (1986); People v. Abramczyk, 163 Mich.App. 473, 415 N.W.2d 249 (1987); State v. Smith, 90 N.C.App. 161, 368 S.E.2d 33 (1988), aff'd, 323 N.C. 703, 374 S.E.2d 866 (1989); State v. Johnson, 12 Utah 2d 220, 364 P.2d 1019 (1961); State v. Stevens, 150 Vt. 251, 552 A.2d 410, 411 (1988); State v. Woodington, 31 Wis.2d 151, 142 N.W.2d 810 (1966), cert. denied and app. dismissed, 386 U.S. 9, 87 S.Ct. 854, 17 L.Ed.2d 699 (1967).